## LINDALE BRICK COMPANY v. S. R. SMITH.

Decided March 4, 1909.

**1.—Laborer's Lien.**

The lien given by art. 3339a of the Revised Statutes, in favor of certain enumerated classes of artisans and laborers extends only to persons whose employment falls within the classes enumerated; one who, by his personal employment falls within one of the enumerated classes has a lien for all his wages, though some of the service performed does not fall within the line of duties of such class; one whose personal employment does not bring him within one of the enumerated classes has no lien for any wages, though he may perform some duties by reason of his employment belonging to the grade or character entitled to lien.

**2.—Same.**

One who is employed by a brick manufacturing company as superintendent and general manager of its business has no statutory lien under article 3339a of the Revised Statutes, though incident to such employment he performed at times some manual labor,

**3.—Same.**

One employed as superintendent and general manager of a brick manufacturing company at a monthly salary was not entitled to a lien for services rendered in that employment falling within the class of a laborer or other enumerated craftsman, there being no way to segregate the value of those services from such as he rendered as superintendent, and the lien given by the statute being for all his wages or none.

**4.—Corporation—Director—Contract—Public Policy.**

Whether the public policy would permit a director in a corporation to recover upon a contract by the directors employing him as superintendent and manager, is questioned but not decided.

**5.—Lien—Conversion of Property.**

The right of an employe to recover wages due against one converting the property of the employer depends upon the existence of the statutory lien upon such property for his wages.

**6.—Lien—Pleading.**

Allegations considered and held not to show plaintiff to be entitled to a lien upon the property of his employer entitling him to recover against a purchaser thereof or one converting it to his own use.

**7.—Amount in Controversy.**

Where plaintiff is not entitled under his pleading to recover anything on account of certain items of his claim and the other items claimed are not sufficient in amount, the court is without jurisdiction.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*Fitzgerald & Butler,* for appellant.—Appellee having been a stockholder and director, and also the manager or superintendent of the Smith County Brick Co. from its organization and during all the time the service was performed for which he claimed a lien against its property, his relation to the corporation and the service performed by him was such that it was not embraced within the terms of the laborer's lien statute of 1897, giving a lien, superior to all others, to certain classes of laborers, for certain labor performed, and he had no lien for his said services. Milligan v. Railway Co., 46 S. W., 918; Railway Co. v. Berry, 31 Texas Civ. App., 408; England's Extr. v. Beatty Organ Co., 41 N. J. Eq., 470; Railway Co. v. Baker, 14 Kan., 428; In re Grubbs-Wiley Gro. Co., 96 Fed., 183; In re Carolina Cooperage Co., 96 Fed., 950; Malcomson v. Wappo, 86 Fed., 192; In re Stryker, 53 N. E., 525; Aiken v. Wasson, 24 N. Y., 483; Coffin v. Reynolds, 37 N. Y., 640; Wakefield v. Fargo, 90 N. Y., 217; Hill v. Spencer, 61 N. Y., 274; Wells v. Railway Co., 1 Fed., 270; Bank v. Iron Co., 35 Fed., 436; Peck v. Rusk, 55 Wis., 465; Brockway v. Innes, 39 Mich., 47; Railway Co. v. Leuffer, 84 Pa. St., 168; Cocking v. Ward, 48 S. W., 287.

The reason and policy upon which such statutes are founded must be that the poor laborer, who depends upon his daily toil, and who is not in such a position as to know when he performs the work whether the concern is solvent or insolvent, may be protected against the mismanagement on the part of the managing officers or owners of such concerns. But surely there is no reason why one of the joint owners

of a business or one of the stockholders or directors of a corporation, who helps to manage and control its affairs, should be given a lien, superior to all others, against property which he in part owns, or why he should be preferred over the man he has borrowed money from and pledged the property to. Appellant having purchased the seventy acres of land with all improvements thereon from a purchaser at foreclosure sale, and the brick press and other machinery being fixtures thereon and a part of the land, and appellant having simply operated the machinery on the same foundations where originally located, was not guilty of a conversion of the brick press, and plaintiff could not recover a judgment against it in a suit for conversion, in so far as the brick press was concerned. Willis & Bro. v. Morris, 66 Texas, 628; Gentry v. Bowser, 2 Texas Civ. App., 390; 13 Am. & Eng. Ency. Law (2d ed.), 678, and authorities cited; 28 Am. & Eng. Ency. Law (2d ed.), 653, and authorities cited; Bracelin v. McLaren, 26 N. W., 533; Glenco v. Hudson, 138 Mo., 439, 60 Am. St. Rep., 560; Beede v. Lamprey, 64 N. H., 510, 10 Am. St. Rep., 426; Morrison v. Berry, 42 Mich., 389, 36 Am. Rep., 446.

*Jesse F. Odom* and *Gentry & Castle,* for appellee.—Appellee Smith, by virtue of a contract of hire by the Smith County Brick Company, a corporation, having performed for it certain labor and other services and having fixed his laborer's lien as required by statute on the property of said brick company, the fact that he was a stockholder and director in said corporation did not affect his lien on the property of the company. Frank & Co. v. Berwind, 47 S. W., 681; Henderson v. Railway Co., 17 Texas, 560; Bank v. Cupp, 59 Texas, 268; Railway Co. v. Allen, 1 App. C. C. (W. & W.), sec. 569; Railway Co. v. Foley, 30 Texas Civ. App., 129.

An employe has a lien to secure his wages upon all the machinery, tools, fixtures, appurtenances, etc., necessarily connected with the performance of his labor or service which may be owned by or in the possession of his employer, and he could not be deprived of his said lien by reason of the fact that the machinery, tools, fixtures and appurtenances were attached to the realty, and the appellant having purchased the land, machinery, etc., while the same was charged with appellee's lien, such purchase was an act of conversion for which appellant would be liable. Sayles' Civ. Stats., art. 3339a; Summerville v. King, 98 Texas, 332.

The brick press, not being attached to the soil, could not become a part of the realty. Cole v. Roach, 37 Texas, 413; Miller v. Munger I. C. M. M. Co., 13 Texas Civ. App., 677; McJunken v. Dupree, 44 Texas, 500; Mundine v. Pauls, 28 Texas Civ. App., 46.

HODGES, ASSOCIATE JUSTICE.—The appellee, S. R. Smith, filed this suit against the appellant in May, 1907, seeking to recover the sum of $1,963.02 as damages for the conversion of a certain brick plant, its machinery and appurtenances, upon which he claimed to have liens for labor performed by himself and others. The petition alleges, substantially, that the Smith County Brick Company was a private corporation formed under the laws of Texas, with its place

of business in Smith County; that during the years 1905, 1906 and a portion of 1907 the company owned and operated a brick plant at Lindale, Texas; that the appellee, Smith, by virtue of a certain contract made by him with the Smith County Brick Company, performed labor to the amount of $1,534.06, as per his itemized account attached. It is further alleged that M. A. Wilds and Henry Henson also performed labor for said brick company, aggregating in value sums stated, and acquired liens under the statute which were assigned to and held by appellee at the institution of this suit. The petition then alleges that in April, 1907, the defendant, Lindale Brick Company, with full knowledge of appellee's rights and liens, purchased all of the property of the Smith County Brick Company as above mentioned and converted the same to its own use to appellee's damage in the sum sued for, and prays judgment for that amount.

Upon a trial judgment was rendered in favor of the appellee, Smith, for the sum of $905.65. The jury specified the claims upon which their verdict rested, and this shows that they ignored the claim for services performed by Wilds, restricted the allowance for the services performed by Smith to $600, but allowed the full amount of the claim by Henson.

*Findings of fact.*—The testimony adduced upon the trial shows the following facts: The Smith County Brick Company was a private corporation organized sometime during the year 1904, for the purpose of manufacturing and selling brick, and the appellee, S. R. Smith, was one of the stockholders and directors. If he was not such at the date of organization he became one shortly thereafter. The company owned about seventy acres of land near Lindale, upon which it established a plant with the necessary machinery for making brick. The business of brickmaking was commenced and continued during the years 1905, 1906 and a small portion of 1907, during which time a large number of brick were made and sold. The company became indebted to the Jester National Bank of Tyler in the sum of $3,000, to secure which it gave a mortgage on its plant and property. It was also indebted to Robert Clark in the further sum of $5,000, to secure which a second mortgage was given on its property and brick plant. The brick company continued its business till or on about the 7th day of January, 1907, when a suit was instituted by Clark on his note and mortgage, a writ of sequestration issued, and the property was taken in charge by the sheriff, who held it till sold under order from the court. Clark prosecuted his suit to judgment, procured an order of sale, and in March following the property was sold and bought in by him for a less sum than the amount of his debt. Clark afterward acquired the claim held by the bank. In April, 1907, the Lindale Brick Company, the appellant in this suit, was organized, and thereafter purchased from Clark the brick plant and the tract of land on which it was situated, and again began operating it. After this last-named purchase this suit was filed for conversion. All of the stock of the Smith County Brick Company, during the time it operated the plant, was owned by five persons—Nowlin, Kennedy, M. A. Wilds, the appellee S. R. Smith, and his brother W. T. Smith. These were also the directors of the corporation, and continued as such during

the time it did business. During the years of 1905, 1906, and that portion of 1907 when the Smith County Brick Company operated the plant, the appellee was the superintendent, having been employed for that purpose by the board of directors. We think the evidence is ample to justify the conclusion that he was given the entire supervision of the plant, with full authority to employ and discharge hands, direct the details of the work, fix the compensation of subordinate employes, determine when and for what length of time they should be engaged, and was responsible to the directors for his management of the business. The testimony also shows that appellee did considerable manual labor about the plant at different times, but whether or not this was required of him by the terms of his contract does not appear. He testifies that he would frequently fill the place of an absent hand, or would assist in laying brick, or help to keep up the fires, repair breaks, and do many miscellaneous jobs about the business. There is nothing, however, to negative the inference that those services were performed from choice rather than in compliance with the exactions of a contract. For aught that appears to the contrary, he was empowered to employ others to do all the manual labor which he performed about the plant. He testifies that his contract with the directors was that he was to get $75 per month if they employed Wilds to assist him; that he told them that if they did not employ Wilds he would charge them $100 per month for his services. They failed to employ Wilds, and he made out his claim for $100 per month. When the Smith County Brick Company ceased to do business, and at the time the plant was sequestered by Clark it was indebted to appellee, according to his estimate, for more than fifteen months services, none of which was ever paid.

Henson was employed as a night-watchman by the appellee while superintending the plant. Henson was also required to and did perform some other services, such as making fires in the furnaces and assisting in handling the brick. His employment began about the first of the year 1906, and he was to receive a monthly compensation of $40. There is some dispute as to whether his wages were payable monthly or at the end of the year. The evidence shows without contradiction that he drew his wages monthly till about the first of June, 1906, after which time he drew none. At the time the property was sequestered by Clark there was due him the sum of $305.66, the amount sued for. Henson testifies that he had the right to demand his wages at the end of each month if he needed them, but his contract was that he was to draw only so much monthly as he needed to live on, and the rest was to be paid at the end of the year. It is shown that the claims of both Wilds and Henson were merely transferred to the appellee to enable him to sue on them in the same action with his; that he had not paid or contracted to pay them any consideration for their claims. On the 22d day of January, 1907, the appellee filed with the county clerk of Smith County, in form as required by law for fixing a laborer's lien, an account against the Smith County Brick Company, claiming an indebtedness of $307.50 as a balance due for labor done and performed for that company at $75 per month, payable January 1, 1906; also an additional claim for

similar services to January 8, 1907, at $100 per month, making a total of $1,534.06. In his affidavit attached to the account the appellee swears that he was employed by the board of directors of the aforesaid company "to do labor, manage and supervise the business of manufacturing brick for said company at its said plant."

On the 26th day of January, 1907, Henson filed with the county clerk of Smith County his claim against the Smith County Brick Company for the sum of $305.66 for services as night-watchman, alleging that the indebtedness accrued on the 1st day of January, 1907. There was a claim filed by Wilds also; but the jury having failed to find anything in favor of the appellee by reason of that claim, it is not necessary to notice it further.

*Conclusions of law.*—The two claims upon which the judgment in this case is based will require separate discussion, inasmuch as the determination of the validity of each as a lien on the property in question will depend upon a construction of different provisions of the statute. The liens claimed in this suit, if they exist, are by virtue of article 3339a of the Revised Civil Statutes giving liens in favor of certain classes of employes who perform labor and other services for security for the payment of their wages. The article referred to provides that "Whenever any clerk, accountant, bookkeeper, artisan, craftsman, factory operative, mill operative, servant, mechanic, quarryman, or common laborer, farm hand, male or female, may labor or perform any service in any office, store, saloon, hotel, shop, mine, quarry, manufactory or mill of any character, or on any farm, under or by virtue of any contract or agreement, etc., . . . in order to secure payment of the amount due by such contract or agreement, written or verbal, the hereinbefore mentioned employes shall have a first lien upon all the products, machinery, tools, etc." Article 3339b provides for the method of fixing and securing the lien. Article 3339c provides that "under the operations of this chapter all wages, if the service is by agreement performed by the day or week, shall be due and payable weekly; or if by the month, shall be due and payable monthly."

The question which logically presents itself as one that should be first considered is, Does this statute give a lien to that class of employes to which the appellee, Smith, belongs? That the statute did not intend to create a lien in favor of all employes is very evident; for had this intention existed the end could have been accomplished with more ease and precision by the use of less verbiage. Another fact is, we think, apparent upon the face of this statute, and that is the purpose of protecting with a lien the classes of employed individuals mentioned, rather than to attach the lien to any particular class or grade of service that might be performed. For instance, the lien is given to the clerk, bookkeeper and accountant, not to any person who might in the course of a dual or miscellaneous employment perform, at times, some of the duties appertaining to those usually falling within the line of work of the clerk, bookkeeper or accountant. It is true we must look to the grade and character of service contracted for and performed by an employe to determine the class to

which he properly belongs, and from that determine whether he falls within the list of the protected classes. But this presents no difficulty except in those instances where the duties are of a dual or mixed character, some belonging to the protected classes and others not. In such cases the only safe method is to ascertain from the contract of employment what are the principal duties of the employe, and this will determine the class to which he belongs, notwithstanding he may at times perform some services not generally belonging to that grade or class of employment. It follows from what we have said that an employe who belongs to any one of the classes mentioned in the statute has a lien for all of his wages, even though some of the labor or service he performs does not fall within the line of duties usually assigned to his class. On the other hand, an employe who does not belong to any one of the groups or classes mentioned in the statute is without the lien, notwithstanding he may at times perform some labor or service properly within the list of duties usually belonging to the protected employes. Where the contract of employment imposes miscellaneous duties but fails to segregate the duties and apportion the wages to be paid, but provides a fixed sum for the entire compensation, the employe has a lien for all of his wages or none. It is just as obnoxious to the statute to extend its provisions so as to permit liens where none were given, as to deny liens by a too restricted construction, where it was intended they should be given. Looking to the principal line of employment provided for by the terms of the appellee's contract with the Smith County Brick Company, we think it clear that he should be classed as a superintendent or manager. Managers and superintendents have no statutory lien for their wages, even though they may at times perform labor or services belonging to those employes who have. Raynes v. Komo, etc., Co., 153 Ind., 315, 54 N. E., 1061; Freeman on Executions, section 234. Counsel for appellee insist that Smith performed manual labor in accordance with the terms of his contract; that such labor was a part of the duties which he assumed in becoming the superintendent of the plant. It is true that the evidence shows that Smith did perform some manual labor about the brick plant, but this, we think, may be regarded as a mere incident to his principal undertaking, the management of the business. That he was not a common laborer, as that term is employed in the statute, is too clear to require discussion. The use of the term "common laborer" in our statute is not without special significance. The language was probably adopted to avoid the confusion experienced in other states in construing similar provisions giving liens or preferences to laborers, and to designate as accurately as practicable the grade of employes meant. Unless we adopt the rule that an employe should be graded according to the lowest instead of the highest service he may have contracted to perform, and this without regard to the principal undertaking, there is no foundation whatever for the conclusion that Smith was a "common laborer," within the meaning of the statute. If, then, he is properly classed as a manager or superintendent, why should he be allowed a lien for all or any part of his wages? Under the evidence we must hold that he was entitled to a lien for all or for no part of his salary, assuming

that no bar has intervened by reason of the lapse of time. If the statute does not include a superintendent or manager among the protected classes, it certainly did not intend to encumber the property upon which such liens were to operate, for compensation to be paid for services, earned as superintendents and managers. When Smith was selected and employed to superintend and manage the brick plant, it is safe to assume that the compensation he was to receive was based principally upon the value of his services in that line; and even admitting that he was also to perform some manual labor in connection with his other duties, such labor would form the basis of a much smaller proportion of his salary or wages. The capacity to manage and superintend a business enterprise always commands higher wages than is allowed for labor of a low grade. There being no way by which the court or the jury could segregate the value of the services rendered by Smith as a superintendent from the value of the wages he might have earned as a laborer, assuming that such a construction of the statute were permissible, there is no basis for the judgment here rendered in his favor. Necessarily he was accorded a lien by the jury for some services, at least, never contemplated by the statute. We can see no good reason for holding that a superintendent should have a lien for the labor of loading brick on a wagon, and be denied one for supervising the labor of others while performing the same service, unless it be held that the statute was enacted for the sole purpose of encouraging people to engage in the classes of labor protected.

It will be observed that the statute' has confined the lien given to classes of employes who occupy subordinate positions in the service, and whose duties do not involve the management and control of the business with which they may be connected. In Wakefield v. Fargo, 90 N. Y., 213, in discussing the provisions of a similar statute, the court said: "He who performs them must be of a class whose members usually look to the reward of a day's labor, or services for immediate and present support, from whom the company does not expect credit, and to whom its future ability to pay is of no consequence." The testimony here shows that Smith was a member of the board of directors, a part of the corporation itself. The success of the undertaking must have depended to a great extent upon his business sagacity and ability to manage the affairs of the company. Its financial embarrassment may have been due to his mistakes. Under such circumstances we see no reason why courts should be called upon to adopt a liberal rule in construing this statute in order to extend its provisions to those under whose management the enterprise has proved a failure.

In an able argument counsel for appellant has urged the proposition that Smith should not be permitted to recover for his wages, for the reason that he is shown to have been a stockholder and a director in the Smith County Brick Company at the time he performed the services for which he now claims a lien, asserting that to do so would be opposed to public policy. There is much force in the suggestion; but inasmuch as we think there are other and sufficient reasons for reversing this judgment we do not pass upon the question.

If Smith had no lien on the property of the Smith County Brick Company for his wages at the time it. was purchased by the appellant, then it follows that he is not entitled to recover in this suit any damages on that account for all the alleged conversion of the property. England's Ex'rs v. Beaty Organ & P. Co., 41 N. J. Eq., 470; Cole v. McNeill, 99 Ga., 250, 25 S. E., 402; In re Clark, 92 Mich., 351, 52 N. W., 637; Raynes v. Komo, etc., Co., 153 Ind., 315, 54 N. E., 1061; McPherson v. Stroup, 100 Ga., 228, 28 S. E., 157; Penn., etc. Co. v. Leuffer, 84 Pa. St., 168, 24 Am. Rep., 189; State v. Land, 108 La., 512, 92 Am. St. Rep., 392; Wakefield v. Fargo, 90 N. Y., 215; Moore v. Am. Industrial Co., 138 N. C., 304, 50 S. E., 687. The right of the appellee to recover in this action must depend solely upon his ability to plead and prove the existence of a lien upon the property formerly owned by the Smith County Brick Company at the time it was purchased by the appellant. The allegations of the petition are no stronger than the evidence, and if this is insufficient to sustain a recovery it follows that the petition is also insufficient. In that portion of the petition in which it is undertaken to set out the facts which gave rise to the lien the allegations are as follows: "That during the year 1905, 1906 and 1907, S. R. Smith, plaintiff herein, by virtue of a certain contract made by him with the Smith County Brick Company, performed labor for it to the amount of $1,534.06, an itemized account of which is hereto attached and marked Exhibit "C" for identification and made a part of this petition." The account filed with the county clerk and referred to as Exhibit "C" is thus stated:

"Tyler, Texas, January 22, 1907.
"Smith County Brick Company to S. R. Smith, .............Dr.
"To amount due S. R. Smith for labor done and performed for said Smith County Brick Company during the year 1905 and due on January 1, 1906, at $75 per month, balance due on said contract ...................... $307.40
"To amount due S. R. Smith for labor done and performed for said Smith County Brick Company from January 1, 1906, to January 8, 1907, at $100 per month..... 1,226.66

"Total amount due ....................$ 1,534.06"

In the affidavit attached to the account in which Smith sets forth the terms of his contract as definitely as this can be said to have been done in any part of his pleadings, he says: "And said Smith County Brick Company, acting through its said board of directors at a meeting held for that purpose on or about the 1st day of January, 1906, employed the said S. R. Smith to do labor, manage and supervise the business of manufacturing brick for its said company at its said plant, and said company agreed to pay the said S. R. Smith for his said services during and for the year 1906 the sum of $100 per month, said wages to be due on January 1, 1907." We do not think these allegations are sufficient to show that the appellee was entitled

to a lien upon the property. His averment that he was entitled to a lien is but the conclusion of the pleader and not the statement of a fact. He should either have alleged a contract of employment within one of the classes mentioned in the statute, or he should have so stated the class of labor, or service he rendered, as to enable the court to designate his principal occupation in the service. The mere statement that one "has performed labor" for another is far from being equivalent to an averment that he belongs to a class of employes to whom the statute has given a lien. Because one labors it does not necessarily follow that he is a "common laborer," or that he belongs to any one of the groups mentioned in the statute whose occupation may involve labor. In a sense all employes labor in some form, but all employes are not protected by the lien.

We deem it unnecessary to notice the assignments which challenge the correctness of the judgment as to the claim of Henson. Both his and Wilds' claims together would not make a sum sufficient to give the District Court jurisdiction, being less than $500. The petition not having stated facts which would justify a recovery on the claim of Smith, the court was without jurisdiction to render judgment on the claims of Henson and Wilds. Peterson v. Thomas, 24 S. W., 1124.

There are other assignments in the record attacking the charge of the court, and other rulings, some of which we think should be sustained. But in view of the disposition we make of the case, it is unnecessary to consider them.

The judgment of the District Court will be reversed and the cause dismissed.

*Reversed and dismissed.*

Writ of error refused.