Bush Brothers Lumber & Milling Company v. A. J. Eastwood et al.

Decided October 29, 1910.

**1.—Mechanic's Lien—Saw Mill—Statute Construed.**

The statute (article 3339a, Rev. Stats.) gives a lien to persons therein named who may labor or perform services "in any manufactory or mill of any character." Held, said expression should be construed to mean in or about any such place, and can not be extended to include persons who render services in a different county many miles distant from a mill, and that have no immediate connection with the actual operation of the mill, though they be in furtherance of its business.

**2.—Same—Case Stated.**

The employees of one who had entered into a contract with a saw mill company to cut logs from the land of the company in one county and haul and deliver them to a railroad station therein whence they would be conveyed by the railroad to the mill in a different county, would have no mechanic's or

laborer's lien upon the property of the company to secure the wages due them by their employer, the contractor; and this, though the logs were hauled by said employees from the woods to the railroad station over a tram road and by engine and cars owned by the company in the county where the labor was performed.

Error from the District Court of Montgomery County. Tried below before Hon. L. B. Hightower.

*John G. Tod, J. C. Williams* and *W. H. Reid,* for plaintiff in error.— The evidence showing that defendant in error, Eastwood, and his assignors, worked only in cutting, loading and hauling logs for Kayser and Terrell under the contract Kayser had with plaintiff in error to furnish it logs, and such work not being done in plaintiff in error's mill, but in the woods, they did not come within any class to whom a lien is given by the Act of May 27, 1897, and defendant in error therefore has no lien under said Act. Chapter 152, General Laws, 1897, sec. 1; Lindale Brick Co. v. Smith, 118 S. W., 568.

*E. W. Nugent,* for defendant in error.—The evidence showing that the work performed by defendant in error and his various assignors was a part of the general work of the mill in getting out logs for its business, it would be a strained and unusual construction of the statute which would deny to them a lien on the tools and machinery used in doing such work, and upon the products of their work, for the reason that their labor was performed in the woods at a distance from the mill and not in the mill itself. Sayles' Texas Civ. Stats., 1897, art. 3339a; Sparks v Crescent Lumber Co., 89 S. W., 425; 27 Cyc., 44, "Work Not Done on Premises."

PLEASANTS, CHIEF JUSTICE.—Defendant in error, A. J. Eastwood, who was plaintiff in the court below, brought this suit against W. P Terrell and A. L. Kayser, composing the firm of Terrell & Kayser, and the plaintiff in error, to recover various sums of money alleged to be due plaintiff Eastwood by said firm of Terrell & Kayser for labor performed by him and various other persons named in the petition under an oral contract of employment made by said firm with plaintiff and the other persons named in the petition, all of whom, it is alleged, had transferred and assigned their claims to plaintiff; and to foreclose an alleged laborer's lien for the amount of said indebtedness upon property of plaintiff in error described in said petition and alleged to be of the value of $4000. The allegations of the petition by which the lien is alleged to have been fixed, and the property upon which said lien is claimed is described are as follows:

"Plaintiff avers that on or about the 23rd day of September, A. D. 1908, and up to and including the 29th day of September, A. D. 1908, and all within thirty days from and after the date on which said several sums were due the said respective parties for labor, as aforesaid, that is to say, within thirty days after the same and every part thereof had

accrued, all of said parties, laborers as aforesaid, hereinbefore named, furnished to the defendants, and to each of them, an itemized, verified statement showing the said several sums due, as aforesaid, the contract of employment under which. same accrued, the time of the performance of said labor, the time when due, the character of labor performed, a description of the property used by said laborers in performing said services for the defendants, as aforesaid; and at the same time filed a copy thereof in the office of the county clerk of Montgomery County, Texas, and had same duly recorded as provided by articles 3339a and 3339b of Sayles' Annotated Statutes of Texas, and then and there and thereby preserved and fixed, under the laws of the State of Texas, a laborer's lien for said several sums so due, as aforesaid, and in favor of the said several parties hereinbefore named, 'upon and against that certain shay engine, logging cars, tools, chains, axes and appurtenances and appliances belonging to and with said engine and cars, and all and singular all railroad iron and steel rails, bolts, fish plates, fastenings and other attachments used in connection therewith, and all switches, railroad cross ties and all appurtenances and appliances owned by the said Terrell & Kayser and said Bush Bros. Lumber & Milling Company, and in their possession at and near the said Minnock Switch, and all of which has been used in connection with said labor performed and in getting out, transporting and shipping logs for the said Terrell & Kayser, and for the said Bush Bros. Lumber & Milling Co., as aforesaid; and all and singular all logs and all timber of every character and kind that may have been cut and handled in any manner by the said respective laborers, as aforesaid, and in connection with their said employment that were then in the woods along, at or near to said tram road, or at or near the I. & G. N. Railroad, or at or near the said Minnock Switch, and all lumber manufactured from said logs at or near Spring, Texas, all of said property being of the reasonable value of $4000."

The defendants, Terrell & Kayser, answered only by general denial.

The defendant below, plaintiff in error here, Bush Bros. Lumber & Milling Company, answered by general demurrer, special exception, and general denial, and specially denied that either defendant in error, Eastwood, or his assignors, did any work upon the property described in defendant in error Eastwood's original petition in the court below, and specially alleged that the plaintiff Eastwood and his assignors worked only for the defendants, Terrell & Kayser; that said work was of the nature only of cutting and sawing logs and timber, and was not such work as under the Constitution and laws of the State of Texas gave the plaintiff or his assignors a lien upon the property of plaintiff in error. Plaintiff in error further specially pleaded that all of the property described in defendant in error Eastwood's petition, upon which he sought to foreclose a lien, is and was the property of plaintiff in error, and never was the property of defendants, Terrell & Kayser, but same was leased by the plaintiff in error to defendants Terrell & Kayser.

The trial in the court below without a jury resulted in a judgment

in favor of the plaintiff for the full amount of his claim against the defendants, Terrell & Kayser, and for foreclosure of the lien claimed by plaintiff. The decree further directed that execution should first issue against Terrell & Kayser and, if plaintiff was unable to make the amount of his judgment by such execution, that an order of sale of the property described in the petition, or so much thereof as might be required to satisfy plaintiff's judgment, should issue, and if said property, or a sufficient amount thereof to satisfy plaintiff's judgment, should not be found, execution should issue against plaintiff in error. It was further ordered that plaintiff in error have judgment over against Terrell & Kayser for whatever sum it might be required to pay in satisfaction of said judgment.

The agreed statement of facts upon which the case was tried in the court below, after reciting the nature of the suit, and that the plaintiff in error is a private corporation having its general office in the city of Houston and being engaged in the business of operating a saw mill for the manufacture of lumber at the town of Spring, in Harris County, Texas, out of logs procured from lands in Montgomery County near Minnock Switch on the International & Great Northern Railroad, and further that plaintiff is the legal holder of the claims of all of the parties named in the petition, contains the following:

"That the plaintiff, A. J. Eastwood, and all of his said assignors hereinbefore named, performed the services as laborers for the said Terrell & Kayser during the times, and that the said several parties earned the said several respective sums, set out in said petition as in said petition stated; that the said several amounts were due at the times and dates stated in said petition; that said services were performed by the said several parties for the said Terrell & Kayser, and that no part thereof has ever been paid.

"That all of the said labor performed by said several parties hereinbefore named was done in the matter of sawing, cutting and hauling logs with wagons, teams, engines and cars, in the filling of a certain logging contract between the said Bush Bros. Lumber & Milling Company and the said A. L. Kayser, the said W. P. Terrell having associated himself with the said A. L. Kayser subsequent to the making of said contract, to which association the said Bush Bros. Lumber & Milling Company never directly or indirectly assented or objected.

"That the particular labor performed by the said several parties was as follows:

"Walter Brown—Swamping logs, or bunching logs in the woods with teams preparatory to hauling them with other teams.

"Dave Thomas—Hauling logs with teams.

"Alfred Johnson—Loading logs on tram cars.

"A. J. Eastwood—Woods boss, whose duties were to assist generally in getting out logs, from the cutting at the stump until their final delivery on the railroad cars, being subordinate to and under the direction

and control of W. P. Terrell, who was then performing the duties of superintendent and foreman.

"Will Young—Sawing logs and hauling logs with teams.

"Chas. Young—Sawing logs.

"Bob Campbell—Fireman on tram engine.

"Chas. Daniels—Loading logs on tram cars.

"Henry Lowe—Engineer on tram engine.

"Sam Tompkins—Blacksmith, whose duties were repairing wagons, carts and engines and trucks and logging cars.

"J. N Pillott—Hauling logs with teams.

"Chas. Harvey—Hauling logs with teams.

"Ed Williams—Hauling logs with teams.

"Tom Spicer—Laborer on tram and logging road, whose duties were to keep said tram road in proper condition for hauling logs over said tram with engine and cars.

"That the labor performed by the said several parties hereinbefore named, as laborers, was a part of the general work of putting out and furnishing logs for the said Bush Bros. Lumber & Milling Company by the said A. L. Kayser and W. P. Terrell, under the said contract between the said Bush Bros. Lumber & Milling Company and the said A. L Kayser, and that said logs were transported from the forest to the I. & G. N. R. R. with the engine, trucks and logging cars and appliances of the said Bush Bros. Lumber & Milling Company, and over their said tram road and steel and iron rails and appurtenances, which said engine, locomotive, cars, trucks and appurtenances and tram road, iron and steel rails and attachments, etc., were then and there the property of and owned by the said Bush Bros. Lumber & Milling Company, and was then in the possession of the said Terrell & Kayser, having been loaned by the said Bush Bros. Lumber & Milling Company to the said A. L. Kayser, and placed in his possession to aid and assist him in getting out and furnishing him with logs, as aforesaid, and that no part thereof was owned by the said A. L. Kayser, and that the ownership of said property of the said Bush Bros. Lumber & Milling Company was not known to said A. J. Eastwood, the plaintiff herein, nor to any of his said assignors.

"That all of said laborers hereinbefore named, including the plaintiff, within thirty days after the accrual of any part of said several sums so due them, as aforesaid, made out duplicate accounts of their said several accounts showing the amounts due them, respectively, stating in each case the amount of labor performed, the agreement under which the same was performed, the price to be paid therefor, the several amounts and the aggregate amounts due each of them, and when due, and supported the same by affidavit, and within said time delivered a copy thereof each to the said W. P. Terrell, A. L. Kayser and Bush Bros. Lumber & Milling Company, and demanded of each of them payment therefor, and immediately, and within the said thirty days, after the accrual of any part of said indebtedness, caused such sworn statements to be filed and recorded in the office of the county clerk of Montgomery County, Texas,

TEXAS CIVIL APPEALS REPORTS, VOL. 62. [*October,*

the county in which said services were performed, as provided by articles 3339a and 3339b of Sayles' Statutes of Texas, and subsequently complied with said statute for the fixing and preservation of said liens, so far as same could by law be fixed by the said several parties upon the said property hereinbefore named, and upon the logs cut and hauled by the said several laborers as aforesaid, and upon the products thereof, the affidavit to all of said respective claims having been made by the respective laborers except in the case of Alfred Johnson, which affidavit was made by Ed Williams; Dave Thomas, which affidavit was made by Ed. Williams; and Walter Brown, which affidavit was made by Chas. Harvey; the question of the validity or invalidity of the claims of the character of the ones in controversy being made by an agent or representative of the laborer, to be submitted to the court.

"That all of the logs cut, hauled and delivered by the several laborers, as aforesaid, aggregating about three hundred thousand feet, were delivered to said Bush Bros. Lumber & Milling Company at Minnock Switch on the said I. & G. N. R. R. in Montgomery County, Texas, and by them transported and delivered to their said saw mill at Spring, Harris County, Texas, and there, by the said Bush Bros. Lumber & Milling Company, manufactured into lumber, and all of which lumber is either now in the possession of said Bush Bros. Lumber & Milling Company at Spring, Texas, or has been sold by them upon the market, and that the market value of said lumber so manufactured from said logs was and is of the aggregate value of three thousand dollars, and that the reasonable market value of said logging engine, tram road, steel, iron rails and appurtenances, and logging cars and appurtenances, is of the aggregate sum of two thousand dollars; and that at and before the beginning of the performance of any of the labor, as aforesaid, and during all of the time that said several laborers were performing their aforesaid services, that said logging engine, cars, trucks and appurtenances and tram road, steel and iron rails and appurtenances hereinbefore mentioned, and all of which were used in handling, procuring and transporting said logs, as aforesaid, were then in the possession of the said Terrell & Kayser, and of the said A. L. Kayser.

"That on March 12, 1908, the defendant, Bush Bros. Lumber & Milling Company, entered into a contract with the defendant A. L. Kayser by which the defendant A. L. Kayser was to cut saw-logs from timber owned by Bush Bros. Lumber & Milling Company on the Richard Vince half league of land in Montgomery County, Texas, and deliver the same on the cars of the I. & G. N. R. R. at Minnock Switch for three dollars and fifty cents per thousand, said logs to be scaled at the mill of the defendant company. At the same time Bush Bros. Lumber & Milling Company agreed to furnish and lend to defendant Kayser an engine, logging cars, railroad iron, fish plates, etc., with which to build a tram road on which to operate said engine and logging cars for the purpose of transporting the logs from the woods to said railroad at Minnock Switch in order that said logs might be loaded on the cars of the I. & G. N.

R. R. and shipped to the defendant Bush Bros. Lumber & Milling Company. Said engine, logging cars, iron and steel rails, etc., being the same that the plaintiff is endeavoring to foreclose a lien on in this suit. That the defendant, Bush Bros. Lumber & Milling Company, did deliver said engine, logging cars, iron and steel rails, etc., to defendant A. L. Kayser and he constructed a tram road upon which to operate said engine and logging cars, and did operate the same in hauling logs thereon until after the performance by plaintiff and his assignors of the labor and services sued for herein, since which time the defendant Bush Bros. Lumber & Milling Company have retaken possession of said engine, cars, logging cars, iron and steel rails, etc., and are now in possession of same."

Under an appropriate assignment of error plaintiff in error complains of the judgment of the court below on the ground that upon the facts disclosed by the record defendant in error had no lien upon the property of plaintiff in error to secure the indebtedness due him.

Article 3339a of Sayles' Civil Statutes, upon which defendant in error bases his claim of lien and which is section 1 of chapter 151 of General Laws of 1897, reads as follows: "Whenever any clerk, accountant, bookkeeper, artisan, craftsman, factory operative, mill operative, mechanic, quarryman or common laborer, farm hand, male or female, may labor or perform any service in any office, store, saloon, hotel, shop, mine, quarry, manufactory or mill of any character, or upon any farm, under or by virtue of any contract or agreement, written or verbal, with any person, employer, firm, corporation, or his, her or their agent or agents, receiver or receivers, trustee or trustees, in order to secure the amount due by such contract or agreement, written or verbal, the hereinbefore mentioned employees shall have a first lien upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels or thing or things of value of whatsoever character that may be created in whole or in part by the labor of such persons, or necessarily connected with the performance of such labor or service, which may be owned by or in the possession of the aforesaid employer, person, firm or corporation, or his, her or their agent or agents, receiver or receivers, trustee or trustees; provided, that the lien herein given a farm hand shall be subordinate to the landlord's lien now provided by law."

In order to fix a lien under the provisions of this statute it must be shown that the person claiming such lien is within the class named in the statute, and that the labor or services performed by such person was performed under the conditions named in the statute.

It may be conceded that the defendant in error and his several assignors are within the class named in the statute, but unless it can be held that the labor or services performed by them was performed under the conditions named in the statute they acquired no lien to secure the amount due them for such labor.

The statute only gives a lien to the class of persons named therein who "may labor or perform service in any office, store, saloon, hotel,

shop, mine, quarry, manufactory or mill of any character, or upon any farm, etc." While this statute should not be so strictly construed as to defeat the manifest intent of the Legislature, it should not be construed so as to give a lien for services not included in those named in the Act merely because such services are apparently as much entitled to protection as those named. We think the term "in any manufactory or mill of any character" should be construed to mean in or about any such place, and the laborer performing services at a mill and in immediate connection with its operation would have a lien for such services if performed outside of the buildings in which the machinery of the mill is operated, or the actual business of the mill carried on, but we do not think that the lien is given when the services for which the lien is claimed are wholly performed at a place miles distant from the mill and have no immediate connection with the actual operation of the mill, though they may be in furtherance of the business of the mill. In the instant case the defendant in error and his assignors were not working for the owner of the mill, and their services were performed in a different county and many miles distant from the mill, and we think it would be judicial legislation for the courts to say that they are entitled to a lien which the statute only gives to secure compensation for services performed "in a mill."

If the contention of the defendant in error is sound, then one who labors in picking cotton belonging to the owner of a cotton gin or factory, such labor being performed on a farm distant from the cotton gin or mill, would be given a lien under this statute for labor performed "in the mill," because the cotton so picked was intended for manufactory in said cotton mill and was so used. The statute can not be so construed.

There may be no sound reason for giving a lien to those who work in the mill and denying it to persons who perform services at some other place for the benefit of and in furtherance of the business of the mill, but the law is so written and it is for the Legislature and not for the courts to correct this inequality, if it be one.

Such being our conclusion on this question it is unnecessary to discuss the other assignments of error presented in brief of plaintiff in error.

We are of opinion that the judgment of the court below should be reversed and judgment here rendered for plaintiff in error, and it is so ordered.

*Reversed and rendered.*