FARMERS' ELEVATOR CO. et al. v. ADVANCE THRESHER CO. (No. 7546.)

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1916. Rehearing Denied Dec. 9, 1916.)

1. LANDLORD AND TENANT &⇒252(1)—CROP RAISED ON RENTED PREMISES—LANDLORD'S RIGHT OF ACTION.

Where a portion of a crop, raised on rented premises, belonging to the landlord, or upon which he has a landlord's lien, is purchased without consent or authority of the landlord within 30 days from its removal from the rented premises, there is a conversion, for which the purchaser is liable to the landlord for the value of the portion converted, the lien being given by statute; and right of recovery is to extent of value of crop converted, if rent due is equal

to or exceeds such value, or, if less, for such sum as is necessary to satisfy the rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1002, 1022; Dec. Dig. ⊝=252(1).]

2. LANDLORD AND TENANT ⊝=246(6), 252(1)— LIEN OF LANDLORD — FORECLOSURE AFTER SALE.

A landlord's lien on his tenant's crop of wheat to secure the payment of rent did not extend to the proceeds of the sale of the wheat, and the landlord could have foreclosed his lien on the wheat in the hands of the purchaser from the tenant, if found.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 999, 1000, 1002, 1022; Dec. Dig. ⊝=246(6), 252(1).]

3. LANDLORD AND TENANT ⊝=252(1)—LIEN OF LANDLORD—ELECTION OF REMEDIES.

A landlord had the legal right to seek a foreclosure of his lien upon his tenant's crop of wheat, if found, or, where the value of the wheat exceeded the amount of rent due, he could sue and recover judgment against the purchaser of the crop from the tenant, and was not compelled to resort to foreclosure.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1002, 1022; Dec. Dig. ⊝=252(1).]

4. LANDLORD AND TENANT ⊝=252(5)—DETERMINATION OF LANDLORD'S LIEN.

The fact that a landlord had no lien on the proceeds of the sale of the wheat raised by his tenant in the hands of the buyer should not prevent determination, in garnishment proceedings against the buyer, of the question whether or not the landlord had a landlord's lien upon the wheat itself, and was entitled to personal judgment against the buyer, so that an equitable adjustment could be made of the rights of all parties, and the buyer protected from having to pay twice for a part of the wheat.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1002, 1029; Dec. Dig. ⊝=252(5).]

5. GARNISHMENT ⊝=85 — PROPER PARTIES — EQUITABLE RELIEF.

In garnishment proceedings against the buyer from a tenant of a crop of wheat raised on the rented premises, the landlord and the party who threshed the wheat were proper parties to make possible an equitable adjustment of the rights of the respective parties, and, in the exercise of its equitable powers, the court could and should have granted such relief, and entered such judgment as became necessary in the premises.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 150–154; Dec. Dig. ⊝=85.]

6. AGRICULTURE ⊝=11—LIEN OF THRESHERMEN—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5644, prescribing who are entitled to liens, a party who threshed wheat with his machine for an agreed consideration under contract had no lien on the grain threshed by him.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 15–30; Dec. Dig. ⊝=11.]

7. MASTER AND SERVANT ⊝=82(1)—WAGES—LIEN—COMPLIANCE WITH STATUTE—NECESSITY.

By direct provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 5645, requiring that, on refusal of any person, employer, etc., to pay wages due, the employé, farm hand, or laborer, etc., shall make duplicate accounts, present one to the employer within 30 days after the indebtedness has accrued, and within such time file the other account with the county clerk for record, compliance with such requirements is

necessary to fix and preserve a lien given under section 5644.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 128; Dec. Dig. ⊝=82(1).]

8. LIENS ⊝=8—STATUTORY LIEN.

A statutory lien can exist only when it has been perfected in the manner prescribed by the statute authorizing it.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 2; Dec. Dig. ⊝=8.]

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Garnishment proceedings by the Advance Thresher Company against the Farmers' Elevator Company, wherein the garnishee prayed that others be made parties, and all claimants be required to liquidate their claims. From judgment that plaintiff recover of the garnishee the full amount of its liability, and that two of the parties impleaded take nothing as against the garnishee or plaintiff. W. T. Waggoner and Ben Kruse, the impleaded parties, appeal. Judgment affirmed as to Kruse and the garnishee, and reversed as to Waggoner, and the cause remanded.

Glover C. Johnson, of Ft. Worth, and Walter G. Miller, of Dallas, for appellants. Bryan & Bryan, of Houston, and Smoot & Smoot, of Wichita Falls, for appellee.

TALBOT, J. The Advance Thresher Company, appellee, which had previously obtained a personal judgment against John McDuff and others, caused a writ of garnishment to issue out of the district court of Dallas county, Tex., and served upon the Farmers' Elevator Company at Electra, Tex. The Farmers' Elevator Company, as garnishee, answered, in substance, that on or about June 15, 1914, McDuff sold and delivered to it certain wheat for which it had not yet paid, and that it believed its indebtedness to McDuff to be about $1,750; that after delivery to it of said wheat, and after service of the writ of garnishment, W. T. Waggoner served notice upon it that said wheat had been raised on a farm belonging to him, that McDuff had not paid any part of the rent, and that he would expect garnishee to withhold the rents due him. The said garnishee also set up that one Ben Kruse had served notice upon it, after service of the writ, that he had threshed the wheat grown on W. T. Waggoner's land, and claimed a lien on said wheat for threshing same at the rate of 12 cents per bushel; that it held said sum subject to the order of the court; prays that McDuff, Waggoner, and Kruse be made parties to the suit; and prayed that all claimants be required to litigate their claims to said fund. McDuff did not answer. Waggoner answered, to the effect that he had rented a farm to McDuff for the season of 1914; that all of the wheat raised by McDuff during said season had been raised on said farm, and had aggregated approximately 3,500 bushels; that said

farm had been rented to McDuff on an express contract that he (Waggoner) should receive one-third of the grain raised thereupon as rent; that if McDuff had sold any grain to the Farmers' Elevator Company, same had been raised on Waggoner's farm under the aforesaid rental contract; that he had not authorized McDuff to sell any part of his (Waggoner's) undivided one-third of said grain; that said elevator company did not acquire any title to Waggoner's part of said grain, and that if it had purchased same, it was liable to Waggoner for the value thereof, for which he prayed judgment in the sum of $1,200. Kruse answered that on or about July 8, 1914, he was employed by McDuff to thresh his grain crop of oats, barley, and wheat; that he threshed for McDuff, 3,039 bushels of wheat at the agreed price of 12 cents per bushel, 835 bushels of barley at 8 cents, and 1,000 bushels of oats at 6 cents, totaling $491.38; that McDuff owed him for said threshing and had paid no portion thereof, but that Waggoner had paid him one-third of said amount, $163.79, same being for Waggoner's third as landlord of the farm upon which said grain was raised. Kruse alleged that McDuff had delivered approximately 2,550 bushels of said wheat to the elevator company on July 13, 1914, and that on the next day he (Kruse) notified the elevator company that he claimed a lien on the grain delivered to it for said threshing. He prayed for judgment against the elevator company for the balance due on his account for threshing of $327.59. Plaintiff joined issue on the facts alleged by Waggoner and Kruse by its supplemental petition. On the issues thus joined the case was heard by the court without a jury, and judgment was rendered on February 4, 1915, that plaintiff recover of garnishee the sum of $1,811.81, the full amount of garnishee's liability, and that the defendants Waggoner and Kruse take nothing as against the defendant elevator company or plaintiff. In due time Waggoner, Kruse, and garnishee filed their respective motions for new trial, which were all overruled, and Waggoner and Kruse excepted and gave notice of appeal.

[1] The appellant Waggoner assigns the action of the trial court in rendering judgment in favor of the appellee Advance Thresher Company for the full amount the garnishee, Farmers' Elevator Company, had agreed to pay McDuff for the wheat purchased from him and grown on appellant's farm, and in denying appellant any recovery against the said garnishee, was error. The proposition asserted under the assignment is as follows:

"Where a portion of a crop, raised on rented premises, belonging to the landlord, or upon which he has a landlord's lien, is purchased without the consent or authority of the landlord within 30 days from its removal from the rented premises, same constitutes a conversion for which the purchaser is liable to the landlord for the value of the portion converted."

This is a correct proposition of law. The lien is given by statute, and the right of the landlord to recover against a purchaser of the crop who, under the circumstances and within the time stated, receives and converts the same is well established by the decisions of our courts. The right of recovery in such a case is to the extent of the value of the crop converted if the amount of the rent due is equal to or exceeds such value, or, if less, then for such sum as may be necessary to satisfy the claim for rent. The rule is announced by the Supreme Court of Texas (Zapp v. Johnson, 87 Tex. 641, 30 S. W. 861) in the following language:

"One who purchases agricultural products produced upon rented premises, or other property liable to the landlord's lien for rent, within the time that the lien continues thereon, and converts the same to his own use, may be sued by the landlord for the value of the property, if it does not exceed the rent due, and, if it should exceed the rent, then for the amount of the rent" (citing Boydston v. Morris, 71 Tex. 697, 10 S. W. 331; Prettyman v. Unland, 77 Ill. 206; Thornton v. Strauss & Steinhardt, 79 Ala. 164; Holden v. Cox, 60 Iowa, 449, 15 N. W. 269).

It is further held in the case cited that the plaintiff is not bound to resort to the property by a distress warrant to enforce the lien thereon after the product has been converted, and that the landlord's right of action is not affected by the failure to institute the suit within 30 days after the removal of the products from the rented premises.

The evidence in this case shows that the appellant Waggoner rented land owned by him to John McDuff for the season of 1913–14, for the raising of a small grain crop; that McDuff was to pay said appellant one-third of the wheat grown on said land as rent therefor; that the rent has not been paid, either in money or wheat; that McDuff sold to the Farmers' Elevator Company 2,474½ bushels of the wheat grown on appellant's land at and for the sum of $1,811.81, and that appellant did not authorize or consent to such sale. The testimony further shows without dispute that the wheat grown on appellant's premises and sold to the Farmers' Elevator Company by McDuff was so sold and converted by said company while appellant's landlord's lien existed upon it. It shows that the wheat was threshed on appellant's farm in July, 1914, and that it was sold and delivered to the Farmers' Elevator Company about the 9th, 10th, and 11th of July, 1914.

[2-5] We think it clear that Waggoner showed himself to be either the owner of one-third of the wheat sold by McDuff to the elevator company, or that he had a lien upon all of it to secure the payment of his rent. We are inclined to the opinion that the testimony showed an ordinary renting, and that Waggoner held a lien upon the wheat to secure the payment of the rent. This lien did not extend to the proceeds of the sale of the wheat, and appellant could

have foreclosed his lien upon the wheat in the hands of the purchaser if found, but it does not appear that the wheat was within his reach. He was, however, in no event compelled to resort to that remedy. He had the legal right to seek a foreclosure of his lien upon the wheat if found, or, as the value of the wheat exceeded the amount of the rent due, he could sue and recover judgment against the purchaser, the elevator company, for the amount of the rent. Estes v. McKinney, 43 S. W. 556. This, in effect, is what appellant Waggoner is seeking in this proceeding to do. His pleadings for this purpose are not as clear and specific as they should be but in the absence of a special demurrer, they are sufficient for the admission of the necessary proof to authorize and sustain such a judgment. The fact that appellant Waggoner had no lien upon the proceeds of the sale of the wheat in the hands of the elevator company should not, in our opinion, prevent the litigation and determination in this suit of the question of whether or not he had a landlord's lien upon the wheat itself and entitled to a personal judgment for the amount of his rent against said company, so that an equitable adjustment could be made of the rights of the respective parties and the elevator company protected by the judgment of the court from having to pay twice for a part of said wheat. This was its purpose in having the appellants Waggoner and Kruse made parties to the suit, and under our blended system they were proper parties for that purpose, and in the exercise of its equity powers the court could, and should, have granted such relief and entered such judgment as became necessary in the premises. It does not appear that the elevator company had notice of appellant's claim and lien until after its purchase of the wheat.

[6] The appellant Ben Kruse contends in effect, that "thresherman" has a lien on grain threshed by him to secure the payment of his claim for such work under article 5644 of Vernon's Sayles' Texas Civil Statutes, and this, too, whether he has complied with the requirements of article 5645 of said statutes or not. We do not agree with this contention. "In order to fix a lien under the provisions of this statute, it must be shown that the person claiming such lien is within the class named in the statute, and that the labor or services performed by such person was performed under the conditions named in the statute." Bush Bros. Lumber & Milling Co. v. Eastwood et al., 62 Tex. Civ. App. 473, 132 S. W. 389. The appellant, Ben Kruse, in operating his machine in threshing W. T. Waggoner's wheat, was not an employé or farm laborer within the meaning of the statute. He simply contracted with the said Waggoner for an agreed consideration to thresh his wheat, and therefore does not come within any of the classes of persons mentioned in, and protected with a lien by, the statute. The analogous cases of Sparks v. Crescent Lumber Co., 40 Tex. Civ. App. 222, 89 S. W. 424, Lindale Brick Co. v. Smith, 54 Tex. Civ. App. 297, 118 S. W. 568, and Jackson v. Downs, 149 S. W. 286, authorize and sustain the foregoing conclusion. In the first case cited, in which a writ of error was denied, it was held that the plaintiff, who had made a contract with the defendant lumber company to haul lumber by its own labor and teams for $3 per 1000 feet, had no lien under the statute in question for his labor and team; that said statute did not apply to a contract of that kind. The court said:

"The word 'laborer' means one who labors with his hands for wages, and does not include one who contracts for the hauling of lumber with his wagon and team at a fixed price per 1000 feet of lumber hauled."

The court further said:

"It is also true that, unlike contracts for personal services, he could have substituted another for himself, or hired other hands and teams, without doing violence to his contract."

The cases of Lindale Brick Co. v. Smith and Jackson v. Downs, supra, are to the same effect, and the language quoted above is applicable to the case at bar.

[7, 8] But, if we should be mistaken in the foregoing views, and appellant Kruse comes within the class of persons mentioned in article 5644 of the statute, still the record fails to show any compliance on his part with the provisions of article 5645, and the trial court properly held he had not acquired a lien on the wheat sold by McDuff to the Farmers' Elevator Company, article 5645 of the statute just referred to provides, in substance, that on refusal of any person, employer, etc., to pay wages due, the employé, farm hand, or laborer, etc., shall make duplicate accounts, present one of them to the employer within 30 days after the indebtedness has accrued and within such time shall file the other account with the county clerk for record, and that compliance with such requirements shall be necessary to fix and preserve the lien given under the law. In Peacock v. Morgan, 61 Tex. Civ. App. 193, 128 S. W. 1191, it is said that there is no ambiguity in this statute, and that, in the absence of a compliance with its provisions, no lien exists. This is but declaring what the article of the statute itself expressly declares. As stated above, it expressly declares that:

"A compliance with the foregoing requirements in this article shall be necessary to fix and preserve the lien given under this [law]."

The lien given by this statute is not such a lien as is given by article 16, § 37, of the Constitution, and it is well settled that:

"A statutory lien can exist only when it has been perfected in the manner prescribed by the statute authorizing it."

Having failed to comply with the statute in question, appellant Kruse in no event had the lien asserted by him.

The judgment of the court below will be affirmed as to the appellant Kruse, and, as to the Farmers' Elevator Company and the appellant W. T. Waggoner, will be reversed, and cause remanded for proceedings not inconsistent with this opinion.

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes