52   603
75   472
77   191
77   617

52   603
83   167
83   495

52   603
88   598
88   632

### JOHN WILLIAMS V. S. L. BALL ET AL.*

1. PRESUMPTION—JUDGMENT.—As à general rule, the law will presume that a domestic court of general jurisdiction had power to make a judgment rendered by it, unless the contrary is shown by the record. Such presumption will not be indulged in favor of the judgment of a court of limited or special jurisdiction, but the facts necessary to the exercise of its jurisdiction must affirmatively appear on the record.

2. SAME.—All the courts of Texas are limited in their jurisdiction; but courts created by express constitutional provision, with general and exclusive powers to hear and determine all controversies within their particular judicial sphere, cannot be said to be courts of limited or special jurisdiction within the meaning of the general rule above given.

3. DISTINGUISHED.—This case distinguished from Mitchell v. Runkle, 25 Tex. Supp., 132.

4. JUSTICES' COURTS.—Courts of justices of the peace, being created by the Constitution, exercise within their defined limits general exclusive jurisdiction.

5. JUDGMENT—JUSTICES' COURTS.—The judgment of a Justice's Court, when rendered, apparently, in the ordinary scope of its power and jurisdiction, though it may not show all the facts necessary to give the court jurisdiction, cannot be collaterally attacked as void for that reason.

6. EVIDENCE—PRESUMPTION.—Title derived by purchase at execution sale under a judgment of a justice of the peace, was attacked in a collateral proceeding, and the defendant in the judgment was permitted to testify that he was not, in fact, served with process in the proceeding under which the land was sold: Held, The evidence showing that the defendant in the judgment was aware of its rendition at the time, and took no steps to set it aside, and though aware of the execution and levy, interposed no objection to the validity of the judgment, the court did not err in holding the evidence insufficient to overturn the presumption in favor of the validity of the judgment.

7. FACT CASES—VARIANCE.—See opinion for facts held insufficient, in a collateral proceeding, to establish a fatal variance between an execution and judgment, affecting the rights of a purchaser at execution sale.

8. PRACTICE—EVIDENCE.—Whether the plaintiff, after the defendant has closed his testimony, shall be permitted to introduce evidence not in rebuttal, rests in the discretion of the presiding judge.

---

*NOTE.—This case was decided at Tyler Term, 1879.

9. EVIDENCE—TRESPASS TO TRY TITLE.—See statement of case for
facts under which a purchaser at execution sale was not required to
show title from the sovereignty of the soil.

APPEAL from Delta. Tried below before the Hon. Green J.
Clark.

Suit by S. L. Ball, J. D. Pickens, and R. H. Capers, on the
9th of February, 1877, against John S. Williams, appellant,
in trespass to try title for sixty-four acres of land situate in
Delta county. The plaintiffs, by their fourth amended petition
filed August 8, 1878, claimed title by purchase at sheriff's sale,
under a judgment rendered in Lamar county, in a Justice's
Court, against A. S. Nowell. They alleged that Nowell de-
rived title by purchase from Hutchins and wife, and they from
one Cunningham. Allegations explanatory of certain credits
upon the magistrate's judgment alleged to be fraudulent, and
of variances between the citation and copy of petition, need
not be noticed. The defendant answered by plea of not
guilty.

The plaintiffs read in evidence a judgment rendered in favor
of Overstreet & Rogers against A. S. Nowell for $12.50 princi-
pal and six cents interest, and costs of suit; execution ordered,
signed F. Mills, J. P., and dated April 1, 1861. To the read-
ing of this judgment defendant excepted, because it did not
show "that A. S. Nowell was ever legally cited, waived serv-
ice, or had his day in court."

Plaintiffs then read in evidence the execution and sheriff's
deed for the land, which was objected to for causes set forth
in the opinion.

A deed from J. J. Cunningham to E. J. Hutchins dated
June 17, 1874, and a deed from E. J. Hutchins to A. S. Now-
ell dated February 25, 1875, were read in evidence.

The testimony showed that one Richy owned the Overstreet
& Rogers judgment, and caused the levy upon and sale of
the land, and that E. J. Hutchins at the time of levy and sale
had possession of the land by tenant.

Nowell was examined as a witness by defendant, and testi-

fied that he never owned or had possession of the land; that
Hutchins made a deed to him, for the land, February 25, 1875,
for which he paid nothing, and did not agree to pay anything;
that Hutchins came to him and said he wanted to make Nowell
a deed to the land to prevent Cunningham, his vendor, from
swindling him out of it; that it was understood that he (Now-
ell) was to sell the land and pay the money over to Hutchins;
that when the land was sold he (Nowell) posted notices dis-
claiming all interest in the land, and denying all knowledge
of a judgment against him; that he never owed Overstreet
& Rogers when the judgment was rendered, and that he was
never cited to appear and answer in their suit against him.

Williams, the defendant, testified, for plaintiffs, that he was
holding as a tenant under G. H. Long; which was objected
to because plaintiff had closed and the evidence was not in
rebuttal.

One of the plaintiffs testified that he did not recollect hear-
ing of any other owner of the land than Nowell when he pur-
chased.

Deeds from Nowell to Long dated September 8, 1876, and
a deed from Long to Williams dated December 21, 1876, were
in evidence.

No jury being demanded, judgment was rendered for plain-
tiffs; from which Williams appealed.

*I. M. Long,* for appellant.—Appellant objected to the judg-
ment being read as evidence, because defendant Nowell was
never cited to appear before said Justice's Court, and did not
appear in person, or by attorney or agent. Hence the judg-
ment was void. (46 Tex., 215; 42 Tex., 328, 388; 30 Tex.,
51; 28 Tex., 557; 27 Tex., 250, 491; 4 Tex., 308; 25 Tex.,
Supp., 132–137; Broom's Legal Maxims, pp. 701–703.)

No presumptions are indulged in favor of the jurisdiction
of a court not of record, and its jurisdiction must always be
shown affirmatively. He who claims title under these courts
must show affirmatively the taking of every step essential to

jurisdiction. Nothing will be presumed in his favor. (49 Tex., 743; 28 Tex., 239; 27 Tex., 496; 4 Tex., 399.)

The statutes of Texas and the decisions of our courts hold and treat the Justice's Court as a special or inferior court, and not a court of record. (1 Tex., 664; 7 Tex., 243; 9 Tex., 413; 25 Tex. Supp., 132; 27 Ala., 396; 6 Wheat., 119–127; 5 H. & J., 132; 11 Wend., 654; 8 Howe, 537; 4 McL., 262; 5 Cranch, 185; 2 Phil. Ev., Cow. & H. Notes, 196, 306; 4 Tex., 356; Dallam, 553.)

*R. H. Capers*, for appellees.

I. The judgment in this case was from a Justice's Court instead of a District Court, and the same precision and exactness are not required in the former as is in the latter, or any other court of general jurisdiction. (Freem. on Judg., pp. 46, 47, and authorities cited.)

II. The record clearly shows that if there be a variance between judgment and execution, it comes within the maxim *de minimus non curat lex*. We contend, that all that is necessary to make the title of plaintiffs good is a valid judgment, a valid execution, and a sheriff's deed. (15 Tex., 354; 27 Tex., 667.) We further contend, that unless the judgment be absolutely void, the title under it is good, no matter how erroneous it might be. (34 Tex., 90, and authorities cited; 44 Tex., 517.)

III. We also contend, that unless an execution be actually void, it can only be objected to by one of the parties to the suit. (1 Tex., 124.) It cannot be attacked in a collateral manner. (46 Tex., 227.)

IV. The deed having passed from Hutchins and wife to A. S. Nowell, they were estopped, after the levy, from denying that it was without a valuable consideration. (29 Tex., 454, and authorities cited.)

Bonner, Associate Justice.—To the introduction in evidence in this case of the judgment of F. Miles, a justice of the peace, in the suit before him of Overstreet & Rogers *v.* A. S.

Nowell, and which was a material link in plaintiff's chain of title, it was objected, by the defendant, that "the judgment failed to recite or show that A. S. Nowell was ever legally cited, or waived service, or had his day in court, when said cause was tried."

The admission of the certified copy of the judgment of the justice of the peace, over this objection, is assigned as error, and brings up for our consideration the most material question in the case.

The general rule is, that the law will presume that a domestic court of general jurisdiction had power to make the judgment rendered by it, unless the contrary is shown by the record. The same presumption will not be indulged in favor of the judgment of a court of limited or special jurisdiction, but the facts necessary to the exercise of its jurisdiction must affirmatively appear upon the record.

All our courts are limited in their jurisdiction; but those created by express constitutional enactments, with general and exclusive powers to hear and determine all controversies within their particular judicial sphere, cannot be said to be courts of limited or special jurisdiction within the meaning of the above rule. (Bumpus v. Fisher, 21 Tex., 567; Guilford v. Love, 49 Tex., 744.)

In the case of Bumpus v. Fisher, 21 Tex., 567, in commenting upon the judgment of a justice of the peace, it is said:

"It is the tendency of American decisions to liberalize the rule of construction with reference to the inferior courts. Our Probate Courts generally would strictly come under the denomination of courts of special and limited jurisdiction. Still, liberal presumptions are indulged in reference to their orders and judgments, although that which gave the power to act, as the predicate for taking jurisdiction, might not appear in the record.

"The rule, then, with respect to courts of limited jurisdiction, that everything must appear on the record strictly and affirmatively which will give them jurisdiction to hear and deter-

mine, is rapidly giving way by the application to our courts, as they are actually constituted, of the same principles which originally formed the rule with reference to their own courts in England."

It was argued by the learned justice who delivered the opinion in the above case, that public policy, the nature of the powers and duties of justices of the peace, and the order of legal capacity which must be employed to fill this office, forbid that their judgments should be construed with every intendment against them, as if they were pleas in abatement, which had to be certain to a certain intent in every particular. (21 Tex., 569.)

In the elaborate opinion of Chief Justice Roberts in the subsequent case of Guilford v. Love, 49 Tex., 740, it was decided that our Probate Courts, though having, under the Constitution, only limited and special powers, are courts of general jurisdiction within the division of subjects allotted to them, and that their orders and judgments made within this scope should be upheld and shielded from collateral attack, the same as those of any other court of general jurisdiction.

It is said by the Supreme Court of Massachusetts, that " a justice of the peace exercised his jurisdiction mainly according to the course of the common law; his court is for many purposes a court of record, to which a writ of error will lie." (Martin v. The Commonwealth, 1 Mass., 347, 389; Thayer v. The Commonwealth, 12 Met., 9; Valier v. Hart, 11 Mass., 300; Arnold v. Tourtellot, 13 Pick., 172; Gay v. Richardson, 18 Pick., 417.)

In our view, the rule which makes the judgment of a court of record binding upon the parties until reversed by proper proceedings therefor, although jurisdiction of the person was not properly obtained, is applied as well to a judgment of a justice of the peace as to one of a court of general jurisdiction. (Hendrick v. Whittemore, 105 Mass., 28.) In that case it is held, that there is a broad distinction between a case where the justice assumed to exercise a judicial power which he did

not possess, and one where he possessed the requisite judicial authority, but in the exercise of it failed to secure by proper proceedings jurisdiction of the person of the defendant. (Hendrick v. Whittemore, 105 Mass., 28; Lightsey v. Harris, 20 Ala., 409; Billings v. Russell, 23 Penn. St., 189; Tarbox v. Hays, 6 Watts, 398.)

The case of Mitchell v. Runkle, 25 Tex. Supp., 132, cited by appellant, was a summary proceeding, penal in character, and not within the ordinary jurisdiction of the justice of the peace.

The judgment in this character of case should be strictly construed. As said by Chief Justice Marshall in Thacher v. Powell, 6 Wheat., 127: "In summary proceedings, where the court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction ought to appear, in order to show that its proceedings are *coram judice.*"

Courts of justices of the peace have been expressly provided for by our several State Constitutions, with certain defined limits, like our Superior Courts, within which they could exercise a general exclusive jurisdiction, and which, by the Constitution of 1876, was largely increased.

Doubtless hundreds of titles to lands in this State are based upon their judgments. To hold that these titles are void unless the record shows affirmatively all the necessary facts, would virtually defeat many of them, involve the country in litigation, and would be contrary to repeated rulings of this court, which hold that such proceedings should be liberally construed. (Freem. on Judg., sec. 53; Clay v. Clay, 7 Tex., 250; Davis v. Rankin, 50 Tex., 286.)

We are of opinion, that judgments of justices of the peace, when apparently within the ordinary scope of this power and jurisdiction, cannot, as was sought to be done in this case, be collaterally attacked as being void for the reason that they do not show affirmatively all the facts necessary to have given the court jurisdiction.

If, in such cases generally, the testimony of the defendant be admissible—which we do not now concede—to prove that in fact he was not served with process, yet, in the case under consideration, we cannot say that the court erred in not holding it sufficient to overturn the presumption in favor of the regularity of the judgment. The defendant in that judgment instituted no proceedings by *certiorari* or appeal to set aside the same, and although aware of the execution and levy, and although he posted written notices to the effect that the property levied upon was not his own, he interposed no objection to the validity of the judgment itself. (McNeill *v.* Hallmark, 28 Tex., 157.)

It is further urged, that the court erred in admitting in evidence the execution issued upon this judgment and the sheriff's deed by virtue of the sale made thereunder, by reason of variances between them and the judgment.

The sheriff's deed is not set out; hence we cannot consider the objection in regard to it. The execution correctly described the court before which the judgment was rendered, the date of its rendition, and the names of the parties to the suit, but misdescribed the amount of the judgment by reciting it as being for "thirteen dollars and thirty-seven cents debt due and interest," when the judgment was for twelve dollars and fifty cents principal and six cents interest. We do not think that this was such a material variance as should, on a collateral attack, avoid a purchase made by a third party at the execution sale.

Mr. Freeman says: "When an execution is not in proper form, or when it misrecites the judgment, as no one but the defendant can be injured, no one but he ought to be allowed to complain; and his complaint ought not to be heard when, by apathy, he has allowed the right of third parties to attach themselves to the execution, or even when he has allowed plaintiff to be placed in a worse situation than though prompt complaint had been made. When sufficient appeared on the face of the execution to connect it with the judgment, courts

have frequently disregarded variances in the names of the parties, in the date, or in the amount of the judgment." (Freem. on Ex., sec. 40; Hughes v. Driver, 50 Tex., 175.)

There was some conflicting testimony as to a credit upon the judgment, of the merits of which the court below was the appropriate tribunal to determine.

The objection that "the court permitted the plaintiffs, after they had closed the case and after the defendant had concluded his testimony, to introduce other evidence not in rebuttal to that of the defendant," is not, we think, sufficient to reverse the judgment.

It has long been the practice to permit this, in the sound discretion of the judge presiding. It is expressly allowed by statute even in criminal cases, and in favor of the State. (R. C., Crim. Proced., art. 661; Paschal's Dig., art. 3046.) And this is now the practice in civil cases, as provided by statute. (Rev. Stats., art. 1298.)

It is not believed there was error in not requiring plaintiff to show title from and under the sovereignty of the soil. The legal title to the land was in defendant in execution, A. S. Nowell, under whom both parties claim. The fact that Hutchins had conveyed it to Nowell to prevent a law-suit with Cunningham, did not, in law, as between these parties, make it less the property of Nowell. (Paschal's Dig., art. 3876.)

There being no apparent error in the judgment below, the same is affirmed.

AFFIRMED.

[Opinion delivered at Tyler Term, November 5, 1879.]