FERRELL–MICHAEL ABSTRACT & TITLE CO. et al. v. McCORMAC et al. (No. 8272.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 27, 1915. On Appellees' Motion for Rehearing, Feb. 5, 1916. Appellants' Motion for Rehearing Denied Feb. 5, 1916.)

1. PRINCIPAL AND SURETY ⬡⇒147(1)—SECURITY GIVEN TO SURETY—RIGHT OF CREDITOR.

Where the maker of a note gave the surety a chattel mortgage, the payee is entitled to benefit of the mortgage.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 402, 405½, 407, 408½; Dec. Dig. ⬡⇒147(1).]

2. CHATTEL MORTGAGES ⬡⇒274 — ENFORCEMENT—LIMITATIONS.

Where the maker of a note mortgaged his personal property to protect a surety, and then transferred the property to a corporation organized to take over his business, limitations did not run in favor of the corporation by reason of its holding the property against the right of the payee to enforce the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 561; Dec. Dig. ⬡⇒274.]

3. CHATTEL MORTGAGES ⬡⇒47—DESCRIPTION—SUFFICIENCY.

A chattel mortgage on property used in abstract business which described it as consisting of abstract books and appurtenances all on described premises is sufficiently definite to warrant foreclosure; for parol evidence is admis-

sible to show what articles are included within the general description.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 87, 88, 96–103; Dec. Dig. ☞47.]

4. CONTINUANCE ☞22—RIGHT TO.

Where defendant against whom intervener had set up claim of a laborer's lien answered that intervener had drawn checks and created liabilities against defendant in excess of the amount of his claim, and asked for a continuance to procure testimony to sustain the defense, and intervener on trial clearly explained the nature of the claims, etc., while defendant made no showing of ability to sustain its charges or to subsequently obtain evidence sought, it was not an abuse of the trial court's discretion to deny continuance.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 58–67; Dec. Dig. ☞22.]

5. MASTER AND SERVANT ☞82(2)—LABORER'S LIENS—RIGHT TO.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5644, declaring that, whenever any clerk, accountant, bookkeeper, factory operator, servant, mechanic, or common laborer shall perform labor, he shall have a lien on all products, machinery, or appliances of the master, etc., intervener, who was engaged to manage an abstract business, but performed much clerical work himself writing up the books and preparing abstracts, was entitled to a laborer's lien, although, as manager or superintendent, he could obtain no such lien.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 129, 130; Dec. Dig. ☞ 82(2).]

6. COURTS ☞121(1)—TEXAS DISTRICT COURT —JURISDICTION.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1848, declaring that before a case is called for trial additional parties may, when they are necessary or proper parties, be brought in, the district court, which had jurisdiction of an action on notes and to foreclose a mortgage, may allow one asserting a laborer's lien against the property of defendant to intervene, although the amount of his claim was less than the jurisdictional amount of the district court; such intervener being a proper, if not a necessary, party.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 410, 413, 416, 426; Dec. Dig. ☞ 121(1).]

7. JUSTICES OF THE PEACE ☞129(3)—JUDGMENT — COLLATERAL ATTACK — PARTIES ENTITLED TO MAKE.

A judgment of a justice of the peace foreclosing a laborer's lien cannot be collaterally attacked by parties or privies on the ground that the property on which the lien was claimed exceeded the jurisdictional amount of justice court, where the amount of the claim was within the jurisdiction of the justice, and the record did not show the value of the property on which the lien was sought to be imposed.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. § 410; Dec. Dig. ☞ 129(3); Judgment, Cent. Dig. § 912.]

8. APPEAL AND ERROR ☞880(3)—NECESSITY OF APPEAL.

A decree against a defendant who did not appeal will not be disturbed on the appeal of the other defendants not interested in that particular.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3588; Dec. Dig. ☞880(3).]

On Appellees' Motion for Rehearing.

9. JUDGMENT ☞495(1) — COLLATERAL ATTACKS—PRESUMPTION.

Upon collateral attack on a judgment of a domestic court it will, where the action was within the court's general jurisdiction be presumed that the necessary jurisdictional facts existed, though they do not appear of record.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 549½, 933; Dec. Dig. ☞495(1).]

10. JUDGMENT ☞818(1) — COLLATERAL ATTACK—FOREIGN JUDGMENTS.

Judgment of a court of foreign jurisdiction can be collaterally attacked by parties or privies, even by evidence dehors the record.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1458, 1459; Dec. Dig. ☞818(1).]

11. JUDGMENT ☞494—COLLATERAL ATTACK— "PARTY"—"PRIVY."

The term "parties" in the sense of one who is concluded by a judgment includes all those directly interested in the subject-matter and who had the right to control or defend the proceedings and appeal, while "privies" are those who succeeded to the rights or property of parties to the judgment; hence a chattel mortgagee was not a "party" nor "privy" to an action against the mortgagor to enforce a laborer's lien on his property, and might collaterally attack the judgment by evidence dehors the record on the ground that the court was without jurisdiction (citing Words and Phrases, Second Series, Party; see, also, Words and Phrases, First and Second Series, Privy).

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 932; Dec. Dig. ☞494.]

12. JUSTICES OF THE PEACE ☞44(2)—JURISDICTION—LABORERS' LIENS—ENFORCEMENT.

In a proceeding to enforce a laborer's lien, unlike one to enforce a landlord's lien, the rule applicable to contract liens that the value of property, and not the demand, determines the jurisdiction of the court, obtains; hence justice court is without jurisdiction of a proceeding to enforce a laborer's lien on property of a value exceeding $200.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 158, 162, 164, 167; Dec. Dig. ☞44(2).]

13. APPEAL AND ERROR ☞1234(5) — SUPERSEDEAS BOND—LIABILITY.

Where a supersedeas bond for appeal from a judgment foreclosing a chattel mortgage was conditioned to perform any judgment of the Court of Civil Appeals, and the judgment was affirmed, sureties are liable only for the costs, and no personal judgment can be rendered against them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4773, 4775; Dec. Dig. ☞ 1234(5).]

Appeal from District Court, Eastland County.

Action by Mrs. C. B. McCormac and others against the Ferrell-Michael Abstract & Title Company and others, in which R. L. Davenport intervened, and to which George Vaught and another were made parties defendant. From a judgment for plaintiffs and intervener, the named defendant and the impleaded defendants appeal. Affirmed in part and reversed and rendered in part.

Earl Conner and M. J. Smith, both of Eastland, for appellants. J. R. Stubblefield, of Eastland, for appellees.

CONNER, C. J. Mrs. C. B. McCormac, C. A. Gray, and J. W. Ward joined in the institution of this suit in the district court of Eastland county, seeking to recover a judgment upon certain promissory notes severally made to these parties. It was alleged that the note to Mrs. C. B. McCormac, which, principal, interest, and attorney's fees, amounted to $512.60, had been executed by J. M. Ferrell, as principal, and J. R. Stubblefield, as surety, that the note payable to C. A. Gray amounting at the date of the judgment, as found by the court, to $606.68, had been executed by J. M. Ferrell, J. R. Stubblefield, and W. B. Ferrell, and that the note payable to J. W. Ward, at the date of the judgment amounting in all to $583.15, had been executed by J. M. Ferrell, W. S. Michael, and J. R. Stubblefield. It was alleged that at the date of the execution of the McCormac note J. M. Ferrell was the owner of a certain abstract business in the town of Eastland, and that, as such owner, he had executed and delivered to the said J. R. Stubblefield a certain mortgage on certain property described in the petition to secure the payment, among others, of the said note to said C. B. McCormac, and that said mortgage had been duly recorded in the proper records of Eastland county; that at a later date not named the Ferrell-Michael Abstract & Title Company was incorporated for the purpose of doing an abstract business in Eastland county, and that all the books, papers, records, and office fixtures and appurtenances theretofore belonging to J. M. Ferrell, and which had been mortgaged as alleged by J. M. Ferrell to secure the McCormac indebtedness, "became the property of the Ferrell-Michael Abstract & Title Company, subject to the mortgage above described," and that the abstract company was in possession of all of the property and asserting some right or title to the same. It was further alleged that 33 shares of the capital stock of said corporation owned by W. S. Michael had been duly mortgaged to J. W. Ward, C. A. Gray, and C. B. McCormac, for the purpose of securing the respective plaintiffs in the several notes owned by them.

Later, by an amended petition, the plaintiffs made George and Nora Vaught parties defendant, alleging, in substance, among other things, that subsequent to the happenings hereinbefore recited, and prior to the institution of the suit, a judgment had been rendered in the justice's court of precinct No. 1 of Eastland county, in the case of M. J. Smith v. the Ferrell-Michael Abstract Company, for the sum of $117.50, with interest and costs, purporting to foreclose a "laborer's lien on the books, papers, records, a Remington typewriter, an Underwood typewriter, and all other fixtures and appurtenances belonging to the Ferrell-Michael Abstract & Title Company, including the record pertaining to the titles to land in Eastland and Stephens counties, Tex.," which said judgment had

been transferred to Nora Vaught, and under and by virtue of which she was asserting some right, title, or interest to the judgment. It was alleged:

"That the said judgment was void because it attempted to foreclose a laborer's lien on personal property in excess of the sum of $200; that it attempted to foreclose a laborer's lien on property of the value of more than $1,000."

The plaintiffs sought to foreclose the mortgage made to J. R. Stubblefield upon the property therein described as against all parties to the suit. They also sought to foreclose the mortgage upon the 32 shares of capital stock that had been issued to W. S. Michael.

All those against whom complaint was made as above stated were made parties defendant, after which R. L. Davenport filed a petition of intervention seeking to foreclose a laborer's lien set up by him upon the property described in the Stubblefield mortgage, and in the plaintiff's petition. A trial was had before the court without a jury, and resulted in a judgment in Mrs. C. B. McCormac's favor against J. M. Ferrell, as principal, and J. R. Stubblefield, as surety, on the note made to her, with a foreclosure of the mortgage lien evidenced by the Stubblefield mortgage upon the property of the abstract company. C. A. Gray and J. W. Ward also recovered judgment for the amounts by them as severally sought, with a foreclosure in their favor upon the 32 shares of the Michael capital stock of the abstract company. The court denied the prayer of these parties that the Stubblefield mortgage be foreclosed in their favor. The court further found and adjudged in favor of R. L. Davenport as against the abstract company for the sum of $130, to secure $60 of which a lien was declared and foreclosed upon the property in controversy as against all parties save the lien foreclosed in favor of Mrs. C. B. McCormac, which was made first in the judgment. It was further found and adjudged that the said judgment of the justice's court in favor of M. J. Smith against the Ferrell-Michael Abstract & Title Company, under which George and Nora Vaught claimed, was "void, because the plaintiff sought in said judgment to foreclose a laborer's lien on property of value in excess of $200." The Ferrell-Michael Abstract & Title Company and George and Nora Vaught severally filed motions for new trial, which were overruled, and they alone have prosecuted appeals.

[1, 2] By exceptions to the petition the judgment, and in other ways, it is contended that Mrs. C. B. McCormac was not entitled to the benefit of the mortgage made by J. M. Ferrell to his surety, J. R. Stubblefield. But in so adjudging we think the court was correct as against the original title of the abstract company. While made direct to J. R. Stubblefield, the surety, one of its specific purposes, as therein recited, was to secure the payment of the note declared upon by Mrs. C. B. McCormac. The note was unpaid,

the mortgage had been duly recorded prior to the abstract company's acquisition of the property, the mortgagee, Stubblefield, was consenting thereto, and no repudiation of the mortgage of which it is shown Mrs. McCormac had notice has been pointed out. Under such circumstances we think the mortgage inured to the benefit of Mrs. C. B. McCormac, that the statute of limitations did not run against her right, and that the title of the abstract company to the books and other property acquired from J. M. Ferrell was in all respects subordinate to the claim of C. B. McCormac. As said in a recent work on Chattel Mortgages (see Jones on Chattel Mortgages [5th Ed.] § 512):

"The mortgage given to a surety inures to the benefit of the creditor to whom the surety is bound; and upon the bankruptcy of the mortgagor a court of bankruptcy will enforce the trust. If the mortgage upon its face be conditioned to indemnify the mortgagee against a liability upon certain debts, it expresses a trust; and one who purchases the mortgage, or takes an assignment of it, takes it with notice of such trust and subject to it. The sale and assignment are then void in equity, and the assignee will be regarded as merely holding the legal title to the property as trustee in place of the original trustee."

See, also, Nat. Shoe & Leather Bank of Auburn et al. v. Small et al. (D. C.) 7 Fed. 837; Hanrion v. Hanrion, 73 Kan. 25, 84 Pac. 381, 117 Am. St. Rep. 453.

That the plaintiffs' action was not barred by limitation, as urged, is apparent in view of the fact that the action was not one for conversion of the property described in the petition, as suggested, but merely one for the foreclosure of a mortgage lien that had been duly recorded before the incorporation of the abstract company, and before, of course, its acquisition of the mortgaged property from J. M. Ferrell. Such record effected the abstract company with notice of the mortgage and of C. B. McCormac's equitable right therein, notwithstanding there may have been a want of actual notice thereof on the part of some of the stockholders of incorporators, as was testified. It is not pretended that the note of C. B. McCormac was barred by limitation, or that she at any time was given notice that the abstract company had or would repudiate the mortgage and hold the mortgaged property in hostility thereto. The mere possession and use of the property under a claim of ownership was not necessarily inconsistent with the terms and legal effect of the mortgage, and certainly not sufficient to establish that character of adverse possession which would be necessary to bar C. B. McCormac's action to foreclose the mortgage declared upon. All assignments of error involving these questions are accordingly overruled.

By other assignments the sufficiency of the description of the property as described in the mortgage, in the plea of intervener, and in the judgment is attacked. Substantially, the description in the mortgage is as follows:

"Two league books, four section books, two lot books, probate index, general index, maps, supplies and machine now on hand and in use, and that are hereafter acquired and used by me, the said J. M. Ferrell, in conducting and continuing in the abstract business, this day purchased by me from the firm of Ferrell & McCormac, said firm being composed of the J. M. Ferrell and C. B. McCormac, said above-described property being in the office and vault at the rear of the building situated on lot No. 6, Blk. —/B1, in the town of Eastland, Eastland county, Texas, and all appurtenances thereto belonging or which may hereafter be acquired."

[3] The description of the property in the judgment is yet, if anything, more complete, and is, we think, on the whole, sufficient. Again quoting from Mr. Jones on Chattel Mortgages, §§ 53, 54, and 54a, it is said:

"It is not necessary that the property should be so described as to be capable of being identified by the written recital or by the name used to designate it in the mortgage. Parol evidence is admissible to show that the particular article is included within the general words of a description, though not to supply an essential word which has been omitted. Thus, under a mortgage of all of the stock, tools, and property belonging to the mortgagor in and about a wheelwright's shop occupied by him, parol evidence is admissible to show what articles were in and about the shop when the mortgage was made. It is obviously impossible in most cases to set forth on the face of the mortgage all the articles embraced in it with such precision that any one, by a mere inspection of the mortgage, without reference to any other source of information, can identify them. Resort must generally be had to parol evidence to identify the property mortgaged, although it be enumerated and described with the utmost minuteness. Such evidence is no more required to identify property described as all one's household furniture than it is when the number of chairs, tables, and other articles is given. * * * A description which will enable third persons, aided by inquiries which the instrument itself suggests, to identify property, is sufficient. * * * Written descriptions of property are to be interpreted in the light of the facts known to and in the minds of the parties at the time. They are not prepared for strangers, but for those they are to affect—the parties and their privies. A subsequent purchaser or mortgagee is supposed to acquire a knowledge of all the facts so far as may be needful to his protection, and he purchases in view of that knowledge. * * * A mortgage which describes the property as 'one bay horse, aged six years,' in the mortgagor's possession in a certain city, is not void by reason of the insufficiency of description, though the description would not enable a third person, without the aid of facts not contained in the mortgage, to identify the horse. But the description would enable a third person, aided by inquiries which the instrument itself suggests, to identify the property, and is therefore sufficient. A mortgage of '50 head of steers about 20 months old, now owned by me and in my possession on my farm' in a certain township, is sufficient against subsequent purchasers, though some of the cattle were bought in an adjoining township into which the farm extended."

It is to be noted that the property under consideration is described in the mortgage as general index maps, supplies, and machines "now on hand and in use by the said J. M. Ferrell in conducting and continuing his abstract business," purchased by him from the firm of Ferrell-Michael Abstract & Title Company on the day the mortgage was executed. The property is further described

as "being in the office and vault at the rear of the building situated on lot No. 6, Block —/B1, in the town of Eastland, Eastland county, Texas." In the light of these references and of the authority from which we have quoted, it is not to be doubted, we think, that an identification of the property may easily be made by resort to competent parol proof, and we accordingly overrule all objections to the plaintiffs' petition, to the judgment, and other proceedings made upon the ground of insufficient description of the property upon which the court foreclosed C. B. McCormac's lien.

[4] A number of assignments of error relating to the claim of intervener, R. L. Davenport, are presented. R. L. Davenport filed his plea of intervention on the 20th day of January, 1915, alleging, among other things, a contract of employment between him and the abstract company at a salary of $60 per month. He further alleged that upon such contract of employment there was a balance due of $150; that his employment required certain work in making abstracts from appellant's books, and in transcribing from the county records certain matters pertaining to land titles, and placing the same upon appellant's books. The particulars of the work which he alleged he did were set out, and intervener declared that to secure the unpaid balance due him he was entitled to the laborer's lien provided for by statute; that he had secured said lien in the manner provided for, and he sought its foreclosure. Later, on the same day, the abstract company filed its first supplemental answer to such plea, denying that it was due the intervener any sum whatever, and alleging that during the time the intervener was in its employment he had charge of the books and accounts until he ceased said employment on the 29th day of December, 1914; that during said time the intervener had made all charges and collected the amounts due the abstract company, which collections he retained; that there appeared on the books of the abstract company outstanding accounts kept by intervener in a sum much greater than sufficient to pay off and discharge all claims asserted by him; that through inadvertence or mistake he (the intervener) had made many collections of accounts, and failed to make the proper credit on the books of appellant, and failed to charge himself with such collections; that the intervener had also issued corporation checks to various parties at the time unknown to the abstract company in payment of his individual indebtedness; and that thereby there were outstanding legal liabilities against the abstract company in a greater amount than would be sufficient to offset the intervener's claim. It was further alleged that the appellant company did not know the true state of the accounts; that the books were then in the hands of an accountant for examination and for the purpose of ascertaining the true condition; but

that time sufficient had not as yet elapsed to enable the abstract company to learn from such persons whose names were on the books whether the accounts had been paid, just how much had been collected, the exact amount that had been appropriated by intervener, etc. And appellant, in close connection with its said answer, made a written application for a continuance of the cause to enable it to obtain the information indicated by its answer, and which, it was alleged, would be sufficient to establish a perfect defense to any alleged indebtedness of the intervener.

The application for a continuance was overruled, to which action the appellant company duly excepted, and the court required the trial to proceed upon the next day, to wit, on January 21, 1915. We have carefully examined the motion and considered the action of the court complained of, but have finally concluded that we would not be justified in reversing the judgment on this account. The motion for continuance, we think, was addressed to the discretion of the court. The intervener, Davenport, testified fully as to his method of bookkeeping, explained a number of the failures to make proper entries, etc., and the court made a corresponding deduction in his claim. There seems to be no evidence by persons named in the motion for continuance, or whose names appear upon the books, of the payment of any sums due the abstract company for which credit was not given, nor does it appear that there were any checks issued by the intervener not accounted for, and no suggestion was made by appellant in its motion for new trial, which was filed on January 29th, that during or since the trial any witness had been discovered who could or would be able, by his testimony, to sustain the suppositional facts in the abstract company's answer. We think, therefore, the assignments and propositions relating to this matter must be overruled.

[5] It is also urged that the court should have stricken out the plea of intervention on the ground that the intervener did not show himself to be within that class of persons entitled to a laborer's lien. The statute invoked by the intervener (4 Vernon's Sayles' Texas Civ. Statutes, art. 5644), so far as necessary to quote, reads:

"That whenever any clerk, accountant, bookkeeper, artisan, craftsman, factory operator, mill operator, servant, mechanic, quarry man, or common laborer, farm hand, male or female, may labor or perform any service in any office, store, * * * by virtue of any contract or agreement, written or verbal, with any person, employer, firm, corporation, or his, her, or their agent or agents, receiver or receivers, trustee or trustees, in order to secure the payment of the amount due or owing under such contract or agreement, written or verbal, the hereinbefore mentioned employés shall have a first lien upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels, * * * or thing or things of value of whatsoever character that may be created in whole or

in part by the labor of, or that may be used by such person or persons, or necessarily connected with the performance with such labor or service, which may be owned by or in the possession or under the control of the aforesaid employer, person, firm, corporation, or his, or their agent or agents, receiver or receivers, trustee or trustees," etc.

The intervener alleged, in substance, that the defendant corporation was engaged in making abstracts to land, perfecting land titles, and in transcribing the various instruments of record in the office of the county clerk of Eastland county, Tex., which affected titles to lands, and recording and indexing such instruments on the books of the corporation kept for that purpose, and that the "intervener was employed to manage, supervise, and control said abstract business of defendant corporation, and labored daily and continually from May 14, 1914, to December 29, 1914, making abstracts,, and, when not so employed, taking off from the deed records of Eastland county and recording and indexing on the books of defendant corporation instruments affecting land titles; that the labor so done and performed by this intervener is now contained on the different books of the defendant corporation and the indexes thereto; that the intervener also kept books of accounts for said defendant corporation in which all debts and credits are shown," etc. The evidence of the character of the intervener's employment and labor corresponds very closely to his allegations as above set out, and the appellant company insists that its case comes within the ruling in the cases of Lindale Brick Co. v. Smith, 54 Tex. Civ. App. 297, 118 S. W. 568; Bush Bros. Lumber & Milling Co. v. Eastwood, 132 S. W. 389; Hatton v. Bodan Lumber Co., 57 Tex. Civ. App. 478, 123 S. W. 163. In the case first cited it was held that one employéd as a superintendent of a brick company was not entitled to a lien for his services, although he at times performed the labor of an ordinary hand, inasmuch as a lien was not given in favor of persons not enumerated, although they may occasionally perform the duties of one of the enumerated classes. The other cases cited are of like effect. We have no disposition to controvert the holdings in these cases, and, while the intervener's case is not without difficulty, we have finally concluded that we cannot disturb the trial court's determination that the intervener brought himself within the statute conferring the line. It is true he alleged and testified that he was employed to manage and control the appellant company's abstract business, but on the whole, as alleged and proved, it seems that his employment and service comprehended the service also of a clerk, one of the classes of persons specifically named in the article of the statute that we have quoted. In the case of Lindale Brick Co. v. Smith, supra, it appears that the manager, Smith, in addition to the duties of management and superintendence, also per-

formed at times labor of the character ordinarily performed by a common servant. This, it was held, did not bring Smith within the designated class, but emphasis is given to the fact there shown that it did not appear that such ordinary labor was required of Smith by the terms of his contract of employment. The court said:

"There is nothing, however, to negative the inference that those services [the ordinary services referred to] were performed from choice, rather than in compliance with the exactions of a contract. For aught that appears to the contrary, he was empowered to employ others to do all the manual labor which he performed about the plant."

In the case before us, however, the intervener's allegations and testimony as a whole indicated that his contract of employment contemplated, not only the supervision and management of the business, but also the performance of the necessary clerical work upon the books of the company. Indeed, it appears that during his employment he alone did all the work necessary in the prosecution of the business, and nothing in the allegation or testimony indicates that it was contemplated, or that he was authorized to employ others to do the clerical work, and at the same time draw the stipulated salary as manager. We think, therefore, that it should be held that in cases like this, where the contract of employment contemplates the performance of services to secure the payment of which the statute was evidently enacted, that the statute should be given effect, even though the clerk, servant, or other person named in the statute was also required to perform services more properly perhaps relating to the functions of a superintendent or manager, who, it appears, is not included within the protected classes of the statute. We feel, therefore, that we must overrule the contention noted. Lindale Brick Co. v. Smith, 54 Tex. Civ. App. 297, 118 S. W. 568.

[6] It is further insisted in various forms that, inasmuch as the intervener's claim amounted to but $150, the court was without jurisdiction to entertain it. But this contention likewise, we think, must be overruled. Our statutes provide that:

"Before a case is called for trial, additional parties may, when they are necessary or proper parties to the suit, be brought in by proper process, either by the plaintiff or the defendant, upon such terms ·as the court may prescribe; but such parties shall not be brought in at such a time or in such a manner as unreasonably to delay the trial of the case." 2 Vernon's Sayles' Tex. Civ. Statutes, art. 1848.

It is doubtless true that the intervener was not a necessary party, and that the court, in the exercise of its discretion, might have refused to entertain his plea, but we think he was not an improper party. The action as instituted by the original plaintiffs was to foreclose a mortgage upon specified property upon which the intervener, by his plea in intervention, also asserted a lien, and it is a favorite doctrine of equity, in order to avoid

a multiplicity of suits, that parties having a common interest in the subject-matter may join, or at least are proper parties, even though their asserted rights may not have a common origin. See 16 Cyc. 65, and numerous authorities cited in note 79. See, also, 11 N. Y. Anno. Dig. §§ 74207, 74208, and authorities cited in notes. See, also, section 783, Jones on Chattel Mortgages, and cases cited in notes 108 and 109; Polk v. King, 19 Tex. Civ. App. 666, 48 S. W. 601, and cases therein cited. It is to be noted that the intervener was not the original actor—not the one who first sought an exercise of the court's jurisdiction. The plaintiffs in the suit were the original movants, and presented a case over which the court had undoubted jurisdiction, both as to the parties and as to the subject-matter, and intervener's attitude was that of one who merely interposes a claim to the subject-matter over which the court already had jurisdiction, and the case was not as if the intervener whose demand was below the jurisdiction of the court, had first sought to maintain the suit.

It appearing that the court already had acquired jurisdiction of the subject-matter, and having already exercised his discretion in entertaining the plea, we think the action of the court in this respect must be sustained, regardless of the amount of the intervener's demand.

In the form of exceptions to the plaintiff's petition, objections to evidence, and to the court's final decree, complaint is made of the action of the court relating to the judgment of the justice court in favor of M. J. Smith against the appellant abstract company, by virtue of which the plaintiffs alleged George and Nora Vaught were claiming some right. Besides costs, the judgment was for the sum of $117.50, and purports to foreclose a laborer's lien on part or all of the property upon which the plaintiff sought to foreclose the mortgage. The plaintiffs alleged, among other things, that:

"The said judgment was void because it attempted to foreclose a laborer's lien on personal property in excess of the sum of $200; that it attempted to foreclose a laborer's lien on property of the value of more than $1,000," etc.

There were other points of attack upon the judgment, but none, it seems, which plaintiffs attempted to support by evidence. R. L. Davenport, however, was permitted to testify over the objection of defendants that the books, etc., upon which the laborer's lien had been foreclosed in the justice court exceeded the sum of $200 in value, and the court adjudged:

"That the judgment rendered by the justice court of precinct No. 1 of Eastland county, Tex., in the cause of M. J. Smith v. Ferrell-Michael Abstract & Title Company, in cause No: 3129, be, and the same is hereby, declared null and void, and of no force or effect whatever as against all parties to this suit, and that the claim of George Vaught and Nora Vaught be hereby declared to be null and void, and the said George Vaught and Nora Vaught are hereby perpetually enjoined from claiming or asserting any rights, title, or interest on account of the said judgment having been transferred to them or either of them, and the plaintiff Mrs. C. B. McCormac, C. A. Gray, and J. W. Ward are hereby given a judgment for any and all costs which have accrued in this case on account of the said George Vaught and Nora Vaught being made parties to this suit, and for which let execution issue as against the said George Vaught and Nora Vaught, or either of them."

We are of opinion that the court erred in his ruling and decree on this branch of the case. Contrary to what has been frequently declared in cases of contract liens, it has been held in a number of cases that, where a foreclosure of a statutory lien is sought, the amount and character of plaintiff's debt or demand determines the jurisdiction of the court, and not the value of the property upon which the foreclosure is sought. See Lawson v. Lynch, 9 Tex. Civ. App. 582, 29 S. W. 1129; Dazey v. Pennington, 10 Tex. Civ. App. 326, 31 S. W. 312; Allen v. Glover, 27 Tex. Civ. App. 483, 65 S. W. 379; Manire v. Wilkinson et al., 136 S. W. 1152. The principle of these cases evidently is that, where the plaintiff establishes a debt within the jurisdiction of the court, and such debt is of the character within the statute giving the lien, the foreclosure upon so much of the property as is necessary to satisfy the judgment follows as a matter of course. In such cases the real controversy is over the amount of the debt, and its character and the lien is but an incident. In all cases where this is true, and where the validity of the lien is in reality not questioned (except as otherwise controlled by statute as in cases of foreclosure of liens upon lands), it seems to the writer, at least, that the principle of the cases just cited is sound, whether the lien asserted arises by contract or statute; for in neither case does the law contemplate an appropriation of more of the property upon which the lien rests than is necessary to satisfy the debt. But, however this may be, we all concur in the distinction made by the above cases between contract and statutory liens, and in accordance therewith are of opinion that the judgment of the justice court in favor of M. J. Smith against the abstract company foreclosing the laborer's lien was not open to attack upon the only ground upon which it seems the judgment of its invalidity rests.

[7] We think the judgment below in this respect was wrong for yet another and perhaps a better reason. The judgment is entirely regular upon its face. The amount for which recovery was sought was $117.50, an amount clearly within the jurisdiction of the justice court. The property upon which the lien was foreclosed was personal property, the value of which, if it could make any difference, does not appear on the face of the judgment to be beyond amounts over which the justice court by statute has been given jurisdiction. It reads as follows:

"M. J. Smith v. Ferrell-Michael Abstract & Title Company.

"In the Justice Court of Precinct No. 1, Eastland County, Texas.

"On this the 8th day of July, A. D. 1914, came on to be heard the cause of M. J. Smith v. Ferrell-Michael Abstract & Title Company, and the plaintiff, M. J. Smith, appearing by his attorney and announced ready for trial, and the defendant having waived process and having entered its appearance herein, but filed no pleadings in this court or made any defense against the claim of said plaintiff, and jury being waived, and matters of fact as well as of law being submitted to the court, and the court, after hearing the evidence adduced and the argument of counsel is of the opinion that the plaintiff, M. J. Smith, should recover of and from the defendant, Ferrell-Michael Abstract & Title Company, a corporation, the sum of $117.50, and all costs in this behalf expended, and, it further appearing to the court that the plaintiff has a valid and subsisting laborer's lien upon the following described property of the defendants: 3 league books of Eastland county, Tex.; 4 section books of Eastland county, Tex.; 1 order book for Eastland county, Tex.; 3 lot books for Eastland county, Tex.; 2 typewriters, one Remington, one Underwood No. 5; 3 section books of Stephens county, Tex.; 1 league book of Stephens county, Tex., marker; section book of Eastland county, Tex.; 1 probate index of Eastland county, Tex.; 1 general index of Eastland county, Tex.; 1 bookcase; 1 table; about 511 duplicate carbon copies of abstracts of title of Eastland county; about 100 copies of deed records of Eastland county, Tex., and about 36 copies of deed records of Stephens county; 1 Stephens county index—it is therefore ordered, adjudged, and decreed that the laborer's lien as it existed on the 27th day of March, 1914, be and the same is hereby foreclosed upon the property described belonging to the defendant, Ferrell-Michael Abstract & Title Company; and it is hereby further ordered and decreed that said property be sold in accordance with law as provided for the sale of personal property under execution, and that the proceeds realized from such sale be applied in liquidation of this judgment, and, if the same be insufficient to satisfy the same, that the balance be made out of any other property of the defendants subject to execution."

There is evidence in the record tending to show that by virtue of the judgment quoted an order of sale was issued out of the justice court in obedience to which the property described in the judgment was sold to Virgil Love on December 29, 1914, and by him sold to H. C. Pope on December 31, 1914, and neither Love nor Pope has been made a party to this suit. But, regardless of considerations that these facts may suggest, we are of opinion that the court was without power to declare the judgment void.

The attack upon the judgment was collateral, and not direct, as evidently was the view of the plaintiffs and of the court below. As said by our Supreme Court in the case of Crawford v. McDonald, 88 Tex. 626, loc. cit. 630, 33 S. W. 325.

"A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of same, in a proceeding instituted for that purpose, such as a motion for rehearing, an appeal, some form of writ of error, a bill of review, an injunction to restrain its execution, etc. A collateral attack on a judgment is an attempt to avoid its binding force in a proceed-ing not instituted for one of the purposes aforesaid, as where, in an action of debt on a judgment, defendant attempts to deny the fact of indebtedness, or where, in a suit to try the title to property, a judgment is offered as a link in the chain of title, and the adverse party attempts to avoid its effect."

In O'Neill v. Potvin, 13 Idaho, 721, 93 Pac. 20, 21, 257, citing 1 Black on Judgments, § 252, it is said that the attack upon the judgment is a "collateral attack" if the action or proceeding has an independent purpose and contemplates some other relief or result than the mere setting aside of the judgment, although the setting aside of the judgment may be necessary to secure such independent purpose. Where an action was instituted to quiet title to land, and in order to so quiet the title a judgment must be held to be void, the action is clearly a collateral attack on that judgment. Tested by these principles and numerous other authorities that might be cited of like effect, it seems clear that the attack upon the justice's judgment is collateral, as contradistinguished from direct. The plaintiffs' suit was instituted for the purpose of foreclosing a lien upon the property described in their petition, and as incidental merely to this, and for the evident purpose of establishing the priority of their mortgage lien the attack was made upon the judgment of the justice's court. Not only the authorities cited, but numerous others that might be cited (see Scudder v. Cox, 35 Tex. Civ. App. 416, 80 S. W. 872, Newman v. Mackey, 37 Tex. Civ. App. 85, 83 S. W. 31, Brooks v. Powell, 29 S. W. 809, and Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325, and cases cited), establish the doctrine that a judgment of a court of competent jurisdiction regular on its face cannot be declared invalid on a collateral attack, and in this respect there can be no difference between the judgment of the justice court and that of any other court of general jurisdiction. Within the limits assigned to them by the statute such courts are treated as courts of general jurisdiction. See Williams v. Ball, 52 Tex. 603, 36 Am. Rep. 730; Long v. Brenneman, 59 Tex. 210; Clayton v. Hurt, 88 Tex. 595, 32 S. W. 876.

It follows, we think, that no right or interest, if any, of appellants George and Nora Vaught, or of other persons, whether parties to this proceeding or not, can be abridged or effected by a decree in the present suit, and the judgment of the court below of contrary effect must be set aside and so determined.

[8] Appellants also urged objection to the foreclosure of the plaintiff's mortgage upon the shares of stock issued to the defendant Michael, but, inasmuch as Michael has not complained of the decree in this respect, we fail to see in what way either of the appellants have cause of complaint. Nor has any complaint of which we can take notice been made of the failure of the court to foreclose the mortgage declared upon in the plaintiffs' petition in favor of the plaintiffs Gray and

Ward. This branch of the subject, therefore, will not be further noticed. On the whole, however, the judgment will be affirmed in part, and reversed and rendered in part, in accordance with the foregoing opinion.

Affirmed in part; reversed and rendered in part.

### On Appellee's Motion for Rehearing.

All parties herein urge motions for rehearing, and we will briefly dispose of the questions presented in a general way.

[9, 10] On original hearing we held, in effect, that the judgment in favor of M. J. Smith against the appellant abstract company was not in this action subject to attack on the ground of a want of jurisdiction in the justice court which rendered it. It is clear, we think, that, as originally announced, the attack herein is a collateral one, and, said court being a domestic court with general jurisdiction within prescribed limits, and a want of jurisdiction not appearing on the face of the record, the judgment mentioned is conclusive as between all parties and privies thereto. Under such circumstances the necessary jurisdictional facts, when not recited, as in the case of the judgment under consideration, will be conclusively presumed to have existed. See, in addition to the authorities cited in our original opinion, 1 Black on Judgments, §§ 270, 271; Murchison v. White, 54 Tex. 78. In this connection, however, we think it should be noted that the authorities make a distinction between judgments of domestic courts and judgments rendered by courts of other states, or personal judgments against a nonresident, or judgments by courts deriving their authority from another sovereign power. Judgments of the latter classes may be attacked in a collateral proceeding on the ground of a want of jurisdiction over either person or subject-matter, even by evidence dehors the record, and by persons who are parties or privies on the face of the proceeding. Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808; 1 Black on Judgments, § 270; Bender v. Damon, 72 Tex. 92, 9 S. W. 747.

[11] Thus far we find no fault in our original opinion, but on reconsideration we have concluded that appellees were neither parties nor privies to the judgment of the justice court, and that hence they are not concluded from showing its invalidity in this action.

"The term 'party,' in the sense of one who is concluded by a judgment, includes all those directly interested in the subject-matter, and who had the right to control or defend the proceedings, examine and cross-examine witnesses, and appeal from the judgment." See Words and Phrases, Second Series, vol. 3, p. 894, citing Allen v. McMannes (D. C.) 156 Fed. 615.

Again, the same author, on the same page, citing Perkins v. Goodin, 111 Mo. App. 429, 85 S. W. 936, says:

"The term 'parties,' as used in connection with the doctrine of res judicata, includes all who are directly interested in the subject-matter of the suit and have a right and are given an oppor-

tunity to make a defense, control the proceedings, examine and cross-examine the witnesses, and appeal from the judgment or decree in case an appeal lies. Persons not having these rights substantially are regarded as strangers to the cause. A mere nominal party, having no control of or interest in the suit, is not bound by the judgment."

Says the same author on page 1219 of the same volume:

"Privity is defined to be a mutual or successive relationship to the same rights of property, and within the rules relating to the conclusiveness of judgments all persons are 'privies' to a judgment whose succession to the rights of property thereby adjudicated was derived through or under one or other of the parties to the action, and accrued subsequent to the commencement of that action." Lamar County v. Talley, 127 S. W. 272.

Again in the same connection it is said:

"Privies, in such sense that they are bound by a judgment, are those who acquired interest in the subject-matter after the rendition of the judgment"—citing cases.

The same author gives numerous other definitions of like import of the terms "parties" and "privies," and therefrom we think it clear that appellee Mrs. McCormac was neither a party nor privy to the judgment of the justice court we have under consideration. Her right as mortgagee in the property involved in the judgment accrued not only prior to the rendition of the judgment, but prior even to the acquisition of the property by the abstract company against which the judgment was rendered. She was not made a party in the proceeding in which the judgment was rendered, had no right of control over the proceedings, had no right of appeal, and claims no right emanating from or under that judgment. On the contrary, her claim is in hostility thereto. As to persons in such relation to a judgment, it is said in 1 Black on Judgments, § 260:

"The rule that a judgment of a court of competent jurisdiction is conclusive, until reversed or in some manner set aside and annulled, and that it cannot be attacked collaterally by evidence tending to show that it was irregular or improperly obtained only applies to parties and privies to the judgment who may take proceedings for its reversal, and in no sense extends to strangers."

See, also, Freeman on Judgments, § 334; Murchison v. White, 54 Tex. 78.

[12] If then, the appellee's plea and proof that the value of the property upon which the laborer's lien in the justice court was foreclosed was in excess of $200, the limit of the jurisdiction of the justice court, must be sustained, as appellee urges, the judgment of the trial court in this case must, as between the parties herein, be approved to the extent necessary to free the property upon which the plaintiffs sought to foreclose their mortgage from the incumbrance, or apparent incumbrance, created by the judgment of the justice court. The sufficiency of the plaintiff's plea to a want of jurisdiction in the respect pointed out cannot be successfully assailed, nor can the finding of the court in favor of appellees upon the issue be disturbed

184 S.W.—69

because of the want of evidence. For the witness R. L. Davenport distinctly testified that the property specified in the judgment and upon which Smith's laborer's lien was foreclosed was of a value far in excess of $200. On original hearing we said:

"Contrary to what has been frequently declared in cases of contract liens, it has been held in a number of cases that, where a foreclosure of a statutory lien is sought, the amount and character of plaintiff's debt or demand determines the jurisdiction of the court, and not the value of the property upon which the foreclosure is sought"—citing a number of authorities, including the leading one of Lawson v. Lynch, 9 Tex. Civ. App. 582, 29 S. W. 1129, which was a case of the landlord's lien.

Appellee, however, now presses upon us a distinction between the landlord's lien and a laborer's lien that was made in the case of Railway v. Rucker, 38 Tex. Civ. App. 591, 88 S. W. 815. In that case it was held that the test of jurisdiction in contract cases applied as well in cases where a foreclosure of a statutory lien is sought, except where the statutory lien sought to be foreclosed was that of a landlord, under title 80 of the Revised Statutes. The case of Railway v. Rucker was distinctly approved by our Supreme Court in 99 Tex. 125, 87 S. W. 818, and, while the distinction is not entirely satisfactory to us, we nevertheless feel bound to apply the distinction here in the case before us.

It follows that appellee Mrs. McCormac and intervener R. L. Davenport are entitled as against George and Nora Vaught, and as against all other parties to this suit, to a foreclosure of the liens in the order and as adjudged below. That this may be done, appellee's motion for rehearing will be granted, with an affirmance of the judgment below in all other respects; no error in other respects having been found.

[13] Appellees further insist that the judgment of this court should have been given against appellants and the sureties upon their supersedeas bond. This contention must be overruled, save as to costs, which will be adjudged against appellants and their sureties as in other cases. No personal or money judgment whatever against appellants or either of them was rendered in favor of appellees Mrs. McCormac or Gray, and the intervener, Davenport, is not complaining. As against appellants the decree simply was that the mortgage lien declared upon should be foreclosed upon the property described in the mortgage and in the judgment, and the terms of the supersedeas bond, which is in compliance with the statute, bind appellants only to prosecute their appeal with effect, "and in case the judgment of the Supreme Court or of the Court of Civil Appeals shall be against them, they shall perform its judgment, sentence, or decree and pay all such damages as said court may award against it." In the absence of a claim of damages for the delay occasioned by the operation of the supersedeas bond, we do not understand that the principal and sureties thereon can be held liable for a debt not adjudged against the principals in the judgment below. Adoue v. Wettermark, 28 Tex. Civ. App. 593, 68 S. W. 553.

We conclude that appellants' motion for rehearing must be overruled, and the judgment below affirmed as hereinbefore stated, and as in other respects in our original opinion provided, with all costs taxed against appellants and the sureties on their supersedeas bond.