ESTEL MARINA CANCEL CAPPA, Plaintiff and Appellant, *v.* BLANCA ROSA MARTÍNEZ ET AL., Defendants and Appellees.

No. 10535. Argued August 26, 1952.—Decided November 24, 1952.

*Ramón G. Goyco* and *Rafael Atiles Moréu* for appellant. *Luis A. Negrón López* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On June 21, 1949, and under Civil case No. R-9786, Estel Marina Cappa filed an action of filiation before the former District Court of Ponce, against the heirs of Julio E. Cancel Fernández, consisting of two first cousins of the latter, called Victoria Cancel and Pedro Cancel, children of Lucas Cancel, legitimate uncle of said Julio E. Cancel Fernández. A default was entered on defendants for not appearing after being duly summoned, and after the trial, said court rendered judgment on July 29, 1949, stating that plaintiff Estel Marina Cappa is the natural acknowledged daugh-

ter of Julio E. Cancel Fernández. After her acknowledgment as natural daughter was thus obtained, Estel Marina Cappa under her new name of Estel Marina Cancel Cappa, and in her character as sole and universal intestate heir of her father Julio E. Cancel, brought on September 2, 1949, before the District Court of Ponce, an action which she entitled "Partition of inheritance and claim of fruits," against defendants herein Blanca Rosa Martínez and her husband, Carlos Rodríguez Vázquez.[1] After alleging in that complaint her character as sole and universal intestate heir of her aforesaid father, who died on April 16, 1932, she set forth in brief the following facts: Her father Julio E. Cancel Fernández was the legitimate son of the spouses José Ramón Cancel Torres and Leticia Fernández Rodríguez, known as Aleticia, and that when José Ramón Cancel Torres died, his widow Leticia married for the second time to Ibo Martínez Nazario. They did not have any children but Ibo Martínez Nazario adopted as his daughter defendant herein, Blanca Rosa Martínez, who is married to codefendant Carlos Rodríguez Vázquez. Leticia Fernández Rodríguez died in April 1926 leaving personal and real property, some belonging to her separately and other to the conjugal partnership that she had constituted with Ibo Martínez; the latter continued enjoying the whole of said property and when he died on February 5, 1945, it passed into the possession of defendant Blanca Rosa Martínez who was declared sole and universal heir of her adoptive father Ibo Martínez according to a decision rendered by the District Court of Ponce. In the light of these facts plaintiff Estel Marina Cancel Cappa requests that the conjugal partnership existing between Ibo Martínez Nazario and Leticia Fernández Rodríguez, her natural grandmother, be liquidated, and prays that defendants be ordered to return to her all the property cor-

---

[1] These defendants tried to intervene in the filiation suit filed by Estel Marina Cappa against the Heirs of Julio E. Cancel, but the Court refused to grant them permission.

responding to her as the universal heir of Julio E. Cancel Fernández, her natural father, legitimate son of said Leticia Fernández Rodríguez, besides the fruits and rentals accrued from said property.

Defendants filed a motion based on various public documents, requesting a summary judgment. Said motion is based on the fact that "plaintiff Estel Marina Cancel Cappa has absolutely no cause of action against those defendants," on the following grounds:

(A) Because the judgment rendered by the former District Court of Ponce in the action of filiation No. R-9786, declaring that Estel Marina Cappa is the natural acknowledged daughter of Julio E. Cancel Fernández, is null and void and constitutes *Coram Non Judice* inasmuch as said court has not acquired jurisdiction on the persons who are by law the intestate heirs of Julio E. Cancel Fernández, inasmuch as the only persons who were defendants, Victoria and Pedro Cancel, have no legal relationship of any kind whatsoever nor have they ever been related to Julio E. Cancel Fernández, predecessor of the heirs sued therein, and alleged father of Estel Marina Cappa; and

(B) Because said judgment of filiation was rendered without jurisdiction over the matter in litigation inasmuch as from the face of the complaint it appeared that the action had prescribed.

Plaintiff filed an elaborate objection to the motion for summary judgment, without supporting it with affidavits or documents of any kind whatsoever. The grounds of said objection may, however, be summarized as follows: The judgment of filiation in favor of plaintiff was rendered with jurisdiction on the parties and on the subject matter, it is res judicata and it can not be attacked collaterally, as defendants pretend to do now; consequently the documents attached to the motion for summary judgment are irrelevant to the action exercised herein and can not be admitted because it is evidence extraneous to the judgment of filiation and to the Judgment Roll. The objection ends with the prayer that "the motion for sumary judgment be flatly dismissed."

Subsequently the District Court of Ponce sustained the motion for summary judgment and consequently rendered judgment dismissing the complaint. In said judgment the documents presented in support of defendants' motion are analyzed as follows:

"From Exhibit B it appears that Pedro Cancel and Ana María Torres, grandparents of Julio Enrique were married in Lajas, on February 11, 1860;

"From Exhibit G, it appears that José Lucas Cancel Torres, legitimate son of Pedro Cancel and Ana María Torres, was born in Lajas, on November 18, 1862; that he was the legitimate uncle of Julio Enrique, who according to Exhibit D was the son of Juan Ramón Cancel Torres, who was born in Lajas on January 16, 1871, son of the afore-mentioned Pedro Cancel and Ana María Torres.

"This Juan Ramón Cancel Torres was the legitimate father of Julio Enrique Cancel Fernández.

"From Exhibit D it appears that Juan Ramón Cancel Torres and Leticia Monserrate were married in Yauco on October 30, 1882.

"From Exhibit F it appears that Julio Enrique Cancel Fernández was born in Yauco on May 2, 1888, and that he was the son from the marriage between Juan Ramón and Leticia.

"On the other hand from Exhibit G it appears that Victoria Santiago, who was sued under the name of Victoria Cancel, was born in Yauco on July 6, 1892 and was the natural daughter of Monserrate Santiago, in whose birth certificate it does not appear that she was acknowledged or legitimized by her alleged father José Lucas Cancel Torres, who was also known as Lucas Cancel.

"Pedro Juan Santiago, co-defendant in the filiation suit with the name of Pedro Santiago, according to Exhibit H, was born in Yauco, on September 5, 1897; he was also the natural son of Monserrate Santiago and neither does it appear from his birth certificate that he was acknowledged or legitimized by his alleged father José Lucas Cancel Torres. This José Lucas Cancel Torres, alleged father, as we have stated, of Victoria and Pedro Santiago, who are sued under the name of Victoria and Pedro Cancel, appears as dying in an unmarried state in Yauco on June 23, 1917. Although both José Lucas Cancel Torres and

Monserrate Santiago, lived for many years in Yauco, there is no record of marriage between the afore-mentioned José Lucas Cancel Torres and Monserarte Santiago in the early Civil Registry of said city."

After considering said documents, the District Court concluded that in sustaining the filiation suit, "the former District Court of Ponce lacked jurisdiction over defendants in the aforesaid suit and that, therefore, the judgment rendered was ... void," inasmuch as defendants therein Victoria and Pedro Santiago [sued under the name of Victoria and Pedro Cancel] were never acknowledged or legitimized children of Lucas Cancel and could not, therefore, be the heirs of Julio Enrique Cancel Fernández. The court a quo also held that pursuant to § 902 of the Civil Code, 1930 ed., even assuming that Victoria and Pedro Santiago were the natural acknowledged children of Lucas Cancel they could not be the heirs of Julio Enrique Cancel Fernández because being such natural children they could not inherit intestate from their first cousin Julio Enrique, who was a legitimate son. Finally, the court a quo stated that "there is no real controversy as to any material fact," and rendered the judgment from which this appeal was taken.

Plaintiff-appellant assigns the commission of two errors to the court a quo, to wit:

1. "The Court erred in rendering summary judgment without a hearing and without the issue being submitted in any way whatsoever to its consideration and decision."

2. "The Court erred in rendering summary judgment based on grounds which were not in issue in the present action, and which had already been decided in a filiation suit which was final and enforceable, in which defendants were not made a party nor were they parties aggrieved or prejudiced by said judgment of filiation."

We shall discuss these errors in an inverse order to the one assigned:

Actually, the fundamental question raised by the second error is whether defendants-appellees herein may

collaterally contest, with extrinsic evidence, the jurisdiction of the trial court over defendants in the filiation action R-9786. If they can not do so, then the judgment appealed from can not prevail because this is precisely based on the nullity of the judgment of filiation. On the other hand, if said collateral attack is permitted, the judgment appealed from must be upheld if from the extrinsic evidence it appears that the aforesaid filiation judgment was rendered without jurisdiction.

A judgment can be attacked collaterally when it has been rendered without jurisdiction, *Pérez v. District Court*, 70 P.R.R. 624, even by strangers who are not a party to the action if they show that they have rights, claims, or interests which could be prejudiced or injuriously affected by the judgment. *Ríos v. Román*, 71 P.R.R. 193. The extrinsic evidence shows that Victoria and Pedro Cancel, defendants in the filiation suit, were not acknowledged children of Lucas Cancel, nor were they related in any form whatsoever to him; therefore said defendants were never the heirs of Julio E. Cancel Fernández, who were the ones intended to be sued in said action. Furthermore, even assuming that Victoria and Pedro Cancel should have been acknowledged by their putative father Lucas Cancel, they still were not the heirs of Julio E. Cancel Fernández. Let us see why. Julio E. Cancel Fernández died in 1932. At that time § 902 of the Civil Code, 1930 ed. provided in its paragraph 5 that "A recognized natural child has no right to succeed intestate legitimate children or relatives—with the exception of grandparents and other ascendants,—of the father or mother who has recognized him or her, nor they to succeed a recognized natural child." It being so, and inasmuch as the hereditary rights are regulated by the legislation in force at the time the predecessor dies, *Lucero et al v. Heirs of Vilá*, 17 P.R.R. 141; *Correa et al. v. Correa et al.*, 18 P.R.R. 115; *Torres et al. v. Rubianes et al.*, 20 P.R.R. 316; *Esterás v. Esterás et al.*, 24 P.R.R. 413; it is clear that Victoria

and Pedro Cancel could not be the heirs of Julio E. Cancel Fernández. In other words, said Victoria and Pedro Cancel are not entitled to inherit from the legitimate relatives of their father Lucas Cancel, who, as we have seen, was the legitimate uncle of the predecessor Julio E. Cancel Fernández. *Ayala* v. *Sucrs. de Ortiz*, 34 *D.P.R.* 960 (per curiam); *Rijos* v. *Peña et al.*, 19 P.R.R. 139; *Rijos* v. *Folgueras et al.*, 19 P.R.R. 141; *Estate of Pagán* v. *Pagán et al.*, 17 P.R.R. 134. It appears therefore that the filiation suit was not directed against the real defendants, that is, the heirs of Julio E. Cancel Fernández, but it was directed against two strangers, who could not be such heirs. This Court has repeatedly held that in order that heirs of an estate may be sued, the names of the successors must be expressed individually and in detail. *Fuentes* v. *District Court; Fuentes, Intervener*, 73 P.R.R. 893; *Heirs of Belaval* v. *Acosta*, 64 P.R.R. 104; *Viera* v. *Goitía*, 55 P.R.R. 291; *Heirs of Rodríguez* v. *Industrial Commission*, 53 P.R.R. 784; *Arvelo et al.* v. *Banco Terr. y Agr.*, 25 P.R.R. 677. Since Victoria and Pedro Cancel could not be the heirs of Julio E. Cancel Fernández it is clear that the court did not acquire jurisdiction over those who should have been the defendants. The reference made in the filiation suit to the heirs of Julio E. Cancel Fernández must be considered as surplusage inasmuch as she did not sue the Estate as an abstract body, but two alleged heirs who were not such. *Fuentes* v. *District Court, supra*, footnote 4. Since the court did not acquire jurisdiction over the real defendants because they were not included in the complaint nor were the real successors of Julio E. Cancel Fernández summoned, *cf. Rosas* v. *Heirs of Bruno*, 41 P.R.R. 143; the judgment is void. *Towner* v. *District Court*, 39 P.R.R. 457; 1 Freeman, *On Judgments*, § 339 p. 683.

In American jurisdictions, numerous authorities state that a judgment of a court of general jurisdiction can not be attacked collaterally for lack of jurisdiction when said

lack of jurisdiction does not appear from the record or judgment roll and that extrinsic evidence can not be produced to show the lack of jurisdiction, 1 Freeman, *On Judgments*, § 375, p. 784; cases cited in 49 C.J.S. 823, footnotes 31 and 32. This is so because the records of a court of general jurisdiction are presumed to speak the truth, 1 Freeman, *op. cit.*, § 375. But this presumption is not applicable to the case at bar, for it is also stated that strangers are not bound by that limitation, but only the parties, theirs assignees or heirs in interest, and that strangers may offer evidence to show the absence of jurisdiction. 1 Freeman, *On Judgments*, § 318, p. 633; 1 Black, *On Judgments*, § 260, cited in *Ferrell-Michael Abstract & Title Co.* v. *McCormac*, 184 S.W. 1081; *City of Fall River* v. *Riley*, 5 N. E. 481; *Turner* v. *Maury*, 224 S.W. 255. This is so because the strangers were not parties to the action, and therefore they could not directly attack the judgment by intervening, appealing, or other direct means. In commentary *c* to § 93 of *Restatement of The Law of Judgments*, at p. 463, the doctrine is summarized as follows:

"The legal effects of a void judgment are narrow in range (see § § 11–13). Such a judgment does not affect title, confers no rights upon the one obtaining it and creates no liabilities upon the one against whom it is rendered. Third persons need not recognize it for other than it is. Thus, where a person relies upon a prior judgment in his chain of title, the other party to the action can avoid its effect by proving that the judgment was void. Further, whether or not the parties to a judgment are bound by the record so that they cannot contradict it, *a stranger to an action of which the court had no jurisdiction because of defective service, although the record showed that the service was good, can show the lack of service even though the defendant in that action would not be permitted to do this.*" (Italics ours.)

Therefore, strangers, as are defendants herein, are in a better position to show not only a defect in the summons but that there was no summons served on the real heirs of the

estate sued. Therefore, the court *a quo* acted correctly in considering the public documents to it presented showing the lack of jurisdiction and that therefore, the filiation judgment was null.

 The first error raises a problem of adjective law. The appellants urged that the court *a quo* rendered the summary judgment without a hearing and without the issue being submitted in any form whatsoever for its consideration and decision.

The record shows that the motion for summary judgment is dated October 17, 1950 and that on the 23rd of that same month and year plaintiffs filed their objection to said motion requesting that the same be flatly dismissed. About six months later, that is, on April 18, 1951, the court *a quo* rendered summary judgment dismissing the complaint. The court in its aforesaid judgment states, "The motion for summary judgment was submitted by the parties for decision." It is significant that when notice of said judgment was served on plaintiffs they proceeded immediately to appeal to this Court instead of filing a motion for reconsideration in the lower court if they really intended to present counter affidavits or opposing papers in support of their objection. It is in this Court that they now raise for the first time said error of procedure. In spite of that they have made no attempt here to show that they are in a position to present at the trial court counter affidavits or opposing papers to contest the ones introduced by defendants and prove, conclusively, that the judgment of filiation was rendered with jurisdiction over defendants. They have rather relied on the questions of law that they raised and argued elaborately in writing in the lower court. Said extensive motion of opposition ended with the prayer that "the motion for summary judgment be flatly dismissed." The court *a quo* could have understood, and in our opinion correctly, that said

prayer implied that the aforesaid motion for summary judgment be decided without further proceedings. According to the *Diccionario de la Lengua Española*, Seventeenth Edition, the word *plano* (flat) means, among other acceptions: ■ 1. "*Llano, liso, sin estorbos ni tropiezos; // De plano*. 2. *For. dícese de la resolución judicial adoptada sin trámites.*" The *Enciclopedia Jurídica Española*, Vol. 24, p. 819, likewise defines the word *plano* as well as the diction *de plano* (flatly). Said encyclopedia states: "*Plano. Llano, liso, sin estorbo alguno. Se dicen de plano las resoluciones dictadas sin trámites ni plazos dilatorios.*" We must establish as a better practice not to disturb or reverse the judgment appealed from unless our refusal to take such action appears to be inconsistent with substantial justice. Appellants have not shown to us that the error of procedure assigned has affected their substantial rights, wherefore even assuming that the error might have been committed the same would not be reversible. Rule 61 of the Rules of Civil Procedure and 3 Moore's Federal Practice, § 61.01, p. 3285.

For the reasons stated the judgment appealed from must be affirmed.

Mr. Acting Chief Justice Snyder did not participate herein.